No. 34,265

THE OLD PEOPLE'S HOME OF THE ILLINOIS CONFERENCE OF THE METHODIST EPISCOPAL CHURCH, QUINCY, ILLINOIS, *Appellant*, v. HENRY F. MILTNER, as Administrator, etc., et al., *Appellees*.

(89 P. 2d 874)

Opinion filed May 6, 1939.

*P. D. Gardiner* and *J. R. Mayall*, both of Wichita, for the appellant.

*B. F. Alford*, of Wichita, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This was an action for the specific performance of an instrument denominated a bond. The trial court made findings of fact and rendered judgment for defendants. Plaintiff has appealed.

The record before us may be summarized as follows: Plaintiff is incorporated under the laws of Illinois to provide for aged men and women, members of the Methodist Episcopal Church, a comfortable residence, with board, clothing, religious privileges, medical and other necessary attendance, and in the event of death to give them respectable burial. It is conducted by a board of trustees, has a constitution and bylaws, and admits to the home two general classes of aged persons—boarders, who pay a specified sum per month, who are privileged to leave when they please and are under no further financial obligation to the home, and inmates sometimes spoken of as guests. These must be past sixty years of age, recommended by the pastor or official board of the church to which they belong, fill out and sign a written application furnished by the home, and pay the sum of $500 and agree to conform to the constitution, bylaws, rules and regulations of the home. If they have other property they are required to convey that to the home and sign a bond promising

to convey to the home such property, or any other property which they may later acquire, and the form of the bond is set out in the bylaws. This additional property transferred to the home is spoken of as a "guest bequest," and the bylaws provide that the home "will pay three percent (later reduced to two percent) interest to guests on all money and productive property above their entrance fee conveyed to the home. However, after their death all such property becomes the exclusive property of the home." The pertinent portion of the bond set out in the bylaws reads:

"And in consideration of such admission to the home and of the benefits secured to me as such beneficiary, I do hereby sell, assign, grant, convey and set and deliver over unto said corporation and its assigns forever, all my property, real and personal; and I do also undertake and agree that in case I shall hereafter acquire or become entitled to any property, real or personal, and I shall elect to remain a guest of the home, then and in such case I will, in like manner, sell, assign, grant, convey and set and deliver over unto said corporation all and singular the property, real and personal, of which I may hereafter become seized or possessed, or to which I may become entitled while such a beneficiary.

"And in case I shall voluntarily, or in pursuance, or under the operations of the bylaws and regulations as aforesaid, cease to be a beneficiary as aforesaid; and shall thereafter become seized or possessed of or entitled to, any property, real or personal, then I do hereby undertake and agree to reimburse the said corporation fully for my support and maintenance, and for supplies and services as may have been furnished me, and for all expense incurred and money laid out for my use and benefit during the whole time that I shall have been such a beneficiary."

The bylaws also provide that an inmate may voluntarily withdraw from the home, or be expelled for cause by the trustees, in which event the entrance fee paid and all other money or property transferred to the home by the inmate shall be returned after deducting therefrom $30 per month, later amended to $40 per month.

Anna S. Juchter and her sister, Beta Juchter, single women, were residents of Sedgwick county and members of the class of persons who could be received as inmates or boarders of the home. On November 12, 1924, Anna S. Juchter made application and was received as an inmate of the home and paid a membership fee of $500, and also made a guest bequest of $1,000. Perhaps at that time she signed a bond, as the bylaws required. She did sign one August 30, 1931. There were no sureties. Except for a short time when she was in the hospital she continued to live at the home until her death, intestate, July 17, 1936.

Beta Juchter entered the home as a boarder in 1929 and, except for intervals of a few months at a time, continued to live in the home as a boarder until her death, intestate, April 30, 1936. On her death she left an estate of the appraised value of $15,450.

Henry F. Miltner was duly appointed administrator of the estate of Beta Juchter and later was appointed also as administrator of the estate of Anna S. Juchter. It was agreed between the parties that the family relation was such that upon the death of Beta Juchter an undivided one-third of her net estate passed by descent to Anna S. Juchter.

This action is on the bond signed August 30, 1931. The petition names as defendants the administrator of each of the estates and the heirs at law of each of the decedents. The matters hereinbefore stated are alleged, and it was alleged that by reason of these facts the plaintiff is the owner of all of the estate of Anna S. Juchter, and that the same includes an undivided one-third of the estate of Beta Juchter. The prayer is for the specific performance of the contract represented by the bond and for such other relief as is just and equitable.

The principal defenses as set forth in the answer were that the bond sued on required an election on the part of Anna S. Juchter at the time she acquired additional property as to whether she would remain in the home or withdraw; that Anna never knew of the death of her sister Beta, or of the fact that she had inherited any property; that she made no election to turn the inherited property over to the home and continue there as an inmate; that in fact she was not mentally capable of making such an election had she known of the inheritance; that because of payments made at the time Anna entered the home it had agreed to care for her as long as she lived and to pay the expense of her burial, and the defendant had failed to perform these obligations in certain enumerated respects.

The evidence tended to show that when Anna entered the home and paid the entrance fee of $500 she was required also to make a guest bequest of $1,000. She had only half that much money and her sister Beta gave her $500 to enable her to make the guest bequest of $1,000. It appears that Anna had no other property. In 1927 Anna became irrational and seriously ill. Beta was notified of that, went to the home, took her to the hospital, where she remained for ten days or more, and was returned to the home. Beta paid these hospital expenses and about that time gave the home an ad-

ditional $500 for Anna's care. For many years Anna was afflicted with arthritis, or rheumatism, and apparently because of that Beta became a boarder in the home and spent her time taking care of Anna.

Among other things the court found that in consideration of the payment of $1,500 by Anna when she entered the home she was to receive the benefits of the home for the rest of her life, or unless and until she acquired other property; that in the event of the acquisition by her of other property, real or personal, she had the option to elect to remain or not to remain as a guest in the home, and only upon her election to remain was she required, under the terms of the bond, to convey and deliver to the plaintiff all of such property; that the bond signed by Anna constituted her agreement pertaining to any after-acquired property, and there is no provision in plaintiff's bylaws which modifies or supplements the bond pertaining to such property; that from Beta's death, April 30, 1936, to Anna's death, July 17 of the same year, there is no evidence that Anna ever was notified of the death of her sister, or that she had inherited one-third of Beta's property, and had Anna been notified of the death of her sister and of her inheritance she was not in mental or physical condition to make an intelligent election as to whether she would remain in the home or cease to be a member of the plaintiff home. The court concluded as a matter of law that Anna was not obligated to transfer any future acquired property to the home unless and until she elected to remain a member of the home, and that after Beta's death she did not make, nor was she physically or mentally competent to make, an election to remain a member of the home, or cease to be such member.

In this court appellant complains of the finding of the trial court that Anna was mentally and physically incompetent to make an election to stay or not to stay in the home after Beta's death and she had inherited a share of Beta's property. We have carefully examined the evidence on that point and find there is an abundance of substantial, competent evidence to support the finding of the trial court. We deem it unnecessary to set this evidence out at length. Appellants cite *Newburyport Soc. Rel. Aged Women v. Noyes*, 287 Mass. 530, 192 N. E. 54, in which specific performance of a somewhat similar bond was decreed even though the inmate did not know of the inheritance. They also cite *Fidelity Union Trust Co. v. Reeves*, 96 N. J. E. 490, 125 Atl. 582, where there was a holding

to the same effect. These cases are to be distinguished from the one before us for the reason that the bond sued on in those cases contained no provision for an election by the inmate after acquiring additional property as to whether he would remain in the home. On the other hand, the bond was a definite and unqualified agreement that the home should have any property later acquired by the inmate. Here the bond specifically provided for such an election. In the argument it was suggested that the form of the bond used by the plaintiff was prepared because of the decision of the court in *Aged Men's Home v. Pierce,* 100 Md. 520, 60 Atl. 277, and the suggestions made in that opinion with respect to the form of a valid contract which might be used. Be that as it may, it is clear that the form of the bond in this case did provide for such an election. This provision cannot be ignored. Such an election presupposes capacity to make it as well as information on which it can be made. Anna S. Juchter had neither mental capacity to make the election nor the information on which to make it. We approve the trial court's findings and conclusion of law on this point.

After the decision was rendered in the trial court plaintiff moved the court to make additional findings of fact fixing the amount paid out by the home for Anna S. Juchter for supplies and services furnished and all expenses during the whole time she was in the home, and to fix the amount of reimbursement to the home in the event she ceased to be a member thereof. The trial court overruled this motion. Appellant complains of that ruling. It was argued that plaintiff's trustees had by their bylaws fixed the cost of living at the home at $10 per week. Counting the time Anna was there, this would amount to $6,070, and deducting the $1,500 paid when she entered, would leave a balance of $4,570, which it is contended the court should have found as the amount due the home for the care of Anna and for which it should have rendered a money judgment. This argument overlooks the fact that the bylaws provided for deducting $40 per month from what previously had been given to the home by the inmate if the inmate voluntarily withdrew. The bylaws do not require of an inmate who withdraws to pay to the home a sum in excess of that previously paid into the home, hence plaintiff was not entitled to the finding and judgment requested by virtue of the bylaws of the home. We think the trial court was correct in holding that plaintiff's recovery, if any, is confined to the terms of the bond, and that there is no bylaw which enlarges that obligation with respect to the property here involved.

Appellant argues that under the bond sued on the court should have held either that Anna S. Juchter made an election to stay as an inmate in the home after she inherited property from her sister, or in legal effect that she elected not to do so; that if the court was correct in holding she did not make an election to stay in the home, then under the second paragraph of the bond sued upon, as hereinbefore quoted, plaintiff should have been given an alternative money judgment for a sum sufficient to reimburse the home fully for the support and maintenance and for such supplies and services furnished, and all expenses incurred and money laid out, for Anna S. Juchter during the whole time that she was an inmate of the home. Under the strict wording of this paragraph of the bond, had an election been made by Anna after she had inherited property from her sister, the funds sought to be recovered in this action would not have been available to pay those expenses in any event. But we pass this point, since it appears not to have been particularly stressed or ruled upon in the trial court.

What is more important is that plaintiff, neither in its pleadings nor in its evidence, made it possible for the court to render this kind of a judgment in its favor. There was no allegation in the petition of facts as to the amount of expenses of this character incurred by plaintiff in the care of Anna S. Juchter. There was no prayer for a money judgment in the alternative. Defendants in their answer made specific allegations to the effect that for most of the time Anna was an inmate of the home her sister Beta acted as her nurse and paid all specific items of expense necessary for her care other than her board and room, which items were amply covered by the $1,500 Anna paid at the time she entered the home and the $500 later paid by Beta. Plaintiff offered no evidence, other than that Anna was an inmate of the home for the time mentioned, respecting the cost of her care, or any items of expense incurred, or money laid out for her use and benefit. In short, both in its pleadings and its evidence plaintiff apparently purposely avoided relying upon that theory of recovery, although the issue was tendered in the answer, and held tenaciously to its theory of a right to recover on the strict specific performance theory. It was not until after the trial was completed on that theory, and judgment rendered, that it moved for an alternative money judgment. If it could be said that was not too late, then there was nothing in the pleading and proof upon which a judgment of that kind could be entered. We think there was no error in the court overruling this motion.

Some other minor questions are argued in the briefs. These have been considered, but we do not regard them as needing separate treatment. We find no error in the record. The judgment of the court below is affirmed.

DAWSON, C. J. (dissenting): I regret that I cannot concur in this judgment, notwithstanding the painstaking care given to the preparation of the opinion of the majority. In view of the fact that the appellant church home received and sheltered Anna S. Juchter for a dozen years and until her death, I do not think appellant's claim under its contract (or bond) should be defeated because Anna did not make a formal election to continue in the home after her property was enhanced by the devolution of her sister's estate. Anna did not elect to stay, but she did stay. That was tantamount to an election. I attach no significance to the fact that her sister at times became a paying guest of the home, and rendered many sisterly services to Anna. That's what sisters are for, and those services took nothing from the binding force of the contract between the appellant church home and Anna S. Juchter. I have no dispute with the majority of this court nor with the trial court on any finding of fact. I place my dissent upon the majority's interpretation of the contract—a pure question of law, since the attendant circumstances are not controverted.