No. 40,445

THE FIRST NATIONAL BANK OF LAWRENCE, KANSAS, a Corporation, Administrator with the Will Annexed of the Estate of Bertha C. Ellsworth, Deceased, *Appellee,* v. THE METHODIST HOME FOR THE AGED, a Corporation, *Appellant.*

(309 P. 2d 389)

Opinion filed April 6, 1957.

*Robert E. Russell* and *James L. Grimes, Jr.,* both of Topeka, argued the cause, and *Clayton E. Kline, M. F. Cosgrove,* and *B. J. Lempenau,* all of Topeka, were with them on the briefs for the appellant.

*Richard B. Stevens,* of Lawrence, argued the cause, and *John W. Brand,* of Lawrence, was with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: Plaintiff is a banking corporation with its place of business at Lawrence, Kansas, and the duly appointed administrator, with the will annexed, of the will of Bertha C. Ellsworth, deceased. Defendant is the Methodist Home For the Aged, a corporation, with its principal place of business at Topeka, Kansas, where it operates a home for the aged.

The events leading up to the institution of this litigation are

not in controversy and should be stated at the outset in order to insure a proper understanding of the appellate issues involved.

On September 13, 1953, Bertha C. Ellsworth, who desired to be admitted to the defendant's home and was then single and more than seventy-one years of age, made a written application for admission to such home. Thereafter, having been advised her application had been approved, she was admitted to the home on May 10, 1954, and on the same date entered into the written agreement with defendant which is actually the subject of this litigation. Pertinent portions of such agreement, which we pause to note had been prepared by defendant on one of its standard forms, used for admission of members, read:

"This Agreement, made and entered into this 10th day of May, 1954, by and between The Methodist Home for the Aged, a Corporation, of Topeka, Kansas, Party of the First Part and Bertha C. Ellsworth, of Lawrence, Kansas, Party of the Second Part, Witnesseth:

"Party of the Second Part having this day given Party of the First Part, *without reservation,* the sum of $10,779.60 to be used and disposed of in the furtherance of its benevolence and charitable work as it may deem best, Party of the First Part *admits Party of the Second Part into its Home as a member thereof during the period of her natural life, and agrees to furnish:"*

"Fifth: *It is clearly understood that Party of the Second Part has been received in accordance with the new regulations on a probation period of two months in which time she has the opportunity of finding out whether she desires to remain in the Home; and also find out whether the Home is able to satisfy the requirements. If it should be found advisable to discontinue her stay in the Home, then her gift, with the exception of $80.00 per month shall be refunded.*

"The rules and regulations and by-laws of the Home as they now are and as they from time to time may be adopted and promulgated by the Board of Directors of said Party of the First Part are hereby referred to and made a part hereof and the Party of the Second Part hereby agrees to be bound by same.* It is especially understood and agreed that in case of serious mental illness requiring hospital care and attention, that the First Party shall have the right to make proper arrangements for the treatment and care of the Second Party in a lawful manner in a proper State Institution, provided that if Second Party is discharged as completely cured to admit Second Party into the Home without further financial requirements." (Emphasis supplied.)

The parties concede that defendant's by-law, article 12, was in full force and effect on the date of the execution of the agreement and therefore, according to the terms of that agreement, is a part of the contract. It reads:

"*Probationary membership means a short trial period while the member becomes adjusted to the life of the Home. The probationary member-ship*

*shall not continue for a longer period than two consecutive months. If for any reason the trial member does not desire to remain in the Home he or she shall have the privilege of leaving. On the other hand, if the Home for any reason does not desire to continue the membership then the member shall be notified in writing and leave the Home within a week after such notice is given.* Only members who do not have the money or securities to pay for their life Membership shall be granted the privilege of paying by the month." (Emphasis supplied.)

After execution of the May 10, 1954, agreement Bertha C. Ellsworth remained in the home until she died on June 10, 1954. At that time neither she nor the home had made an election as to whether she was to leave the home or remain therein after the expiration of the probationary period specified by its terms. However, it is conceded that during the interim, and on June 4, 1954, the plaintiff bank in its capacity as trustee had paid the defendant the sum of $10,799.60 by a check, which defendant had cashed, specifying that such check was "In Payment of Life Membership for Bertha C. Ellsworth in the Methodist Home for the Aged, as specified in Agreement dated May 10, 1954", and that defendant had acknowledged payment of that sum by a receipt of like import.

Upon the death of Bertha Ellsworth plaintiff was appointed by the probate court of Douglas County, Kansas, as Administrator CTA of such decedent. Thereafter it made written demand on the defendant for performance under the agreement, including pertinent by-laws, and demanded that defendant refund the estate of its decedent the amount paid pursuant thereto, less any amounts due the Home under its terms, particularly the fifth clause thereof. When this demand was refused plaintiff procured authority from the probate court to institute the instant action to recover such amount as an asset of the estate of Bertha C. Ellsworth, deceased.

Following action as above indicated plaintiff commenced this lawsuit by filing a petition which, it may be stated, recites in a general way that under the more important facts, conditions and circumstances, heretofore outlined, the defendant had never attained a life membership in the home by reason of her death prior to the expiration of the probationary membership period prescribed by the contract, hence the contract should be construed as contemplating her estate was entitled to a return of the money paid by her to defendant for such a membership. When a demurrer to this pleading, based on the ground it failed to state a cause of action, was overruled by the trial court defendant filed an answer alleging

in substance that under the same facts, conditions and circumstances the contract between it and the decedent is to be construed as warranting its retention of the sum paid by such decedent for the life membership even though, prior to her death, such decedent neither indicated that she did not desire to remain in the home nor that she desired the privilege of leaving it. It should perhaps be added that such answer contains an allegation that on May 10, 1954, decedent was permitted to enter the home without having paid her life membership; admits subsequent payment of such membership in the manner heretofore indicated; and makes decedent's application for admission to the home a part of such pleading.

With issues joined, as heretofore related, the cause came on for trial by the court. During the trial facts, as heretofore related, were established by evidence and at the conclusion thereof the trial court, after holding that the salient question in the case was purely a question of law involving the interpretation of the contract, rendered judgment decreeing that plaintiff was entitled to recover the amount paid by Bertha C. Ellsworth to the Home, less $235 paid by the Home for her funeral expenses and less the sum of $80 provided for in the contract in the event she had elected not to remain in the home. Thereupon defendant perfected this appeal wherein under proper specification of errors it charges the trial court erred in overruling the demurrer to the petition; in rendering judgment for plaintiff and against defendant, wholly contrary to the law and the terms of the agreement; and in overruling its motion for a new trial.

In a preliminary way it can be said a careful examination of the record leads to the inescapable conclusion the trial court was eminently correct in holding that the all decisive question involved in this case is purely a question of law involving the interpretation of the contract entered into between the appellant and Bertha C. Ellsworth, deceased. Indeed the parties make no serious contention to the contrary. For that reason, and others to be presently disclosed, we turn directly to appellant's claim the trial court's judgment was contrary to the terms of the agreement and to the law, mindful as we do so that where—as here—the terms of a contract are ambiguous, obscure or susceptible of more than one meaning there are certain well defined rules to which courts must adhere in construing its provisions. Four of such rules, which we believe have special application here, can be stated as follows:

1. That doubtful language in a contract is construed most strongly against the party preparing the instrument or employing the words concerning which doubt arises. (See *Kinmonth v. Holm.,* 180 Kan. 389, 392, 304 P. 2d 494; *Francis v. Shawnee Mission Rural High School,* 161 Kan. 634, 170 P. 2d 807; *Green v. Royal Neighbors of America,* 146 Kan. 571, 73 P. 2d 1; 12 Am. Jur., Contracts, 795 § 252; 17 C. J. S., Contracts, 751 § 324; Hatcher's Kansas Digest [Rev. Ed.], Contracts, § 44; West's Kansas Digest, Contracts, § 155.)

2. That where a contract is susceptible of more than one construction its terms and provisions must, if possible, be construed in such manner as to give effect to the intention of the parties at the time of its execution. (*Braly v. Commercial Casualty Ins. Co.,* 170 Kan. 531, 227 P. 2d 571.)

3. That in determining intention of the parties where ambiguity exists in a contract the test is not what the party preparing the instrument intended its doubtful or ambiguous words to mean but what a reasonable person, in the position of the other party to the agreement, would have understood them to mean under the existing conditions and circumstances. (*Braly v. Commercial Casualty Ins. Co.,* supra.)

4. That the intent and purpose of a contract is not to be determined by considering one isolated sentence or provision thereof but by considering and construing the instrument in its entirety. (*Maltby v. Sumner,* 169 Kan. 417, 219 P. 2d 395; *In re Estate of Koellen,* 162 Kan. 395, 176 P. 2d 544; *Lawrence v. Cooper Independent Theatres,* 177 Kan. 125, 276 P. 2d 350.)

Stated, substantially in its own language, the principal contention advanced by appellant as grounds for reversal of the judgment is that the membership agreement between it and the involved decedent was fully executed inasmuch as decedent had been admitted to the Home as a life member on May 10, 1954, and thereafter caused her life membership to be paid; hence, since nothing further needed to be done by the parties to make the portion of the agreement relating to life membership binding, provisions of the contract with respect thereto had become fully executed and title to the fee paid for such membership had vested in appellant.

If we could limit our construction of the contract to its first two paragraphs, as heretofore quoted, we might well conclude that appellant's views respecting the status of the agreement and the gift therein mentioned could be upheld. However, as has been

previously demonstrated, our obligation is not to consider isolated provisions of the contract but to consider and construe such instrument in its entirety. When succeeding paragraphs of the agreement, and the incorporated by-laws, particularly portions thereof which we have heretofore underlined for purposes of emphasis, are reviewed in the light of the rule to which we have just referred, as well as others heretofore mentioned, we have little difficulty in concurring in the views expressed by the trial court in rendering its judgment that the contract had never become executed and that title to the gift paid by the decedent for a life membership had not vested in the Home. In fact, and without repeating the emphasized portions of the agreement on which we base our conclusion, we go further and hold that, under the clear import and meaning of such emphasized provisions, Bertha C. Ellsworth, because of her untimely death during the probationary and/or trial period expressly required by their terms, never attained a life membership status in the Home. Indeed to hold otherwise would not only do violence to the language of the contract but read into it something that is not there.

One question remains in this lawsuit. Who, the Home or the decedent's estate, is entitled to the life membership fee paid by decedent to appellant? In this connection it is interesting to note that the money was paid by decedent by a check and receipted for by appellant in writing, each of which instruments contain a recital "In Payment of Life Membership for Bertha C. Ellsworth in the Methodist Home for the Aged, as specified in Agreement dated May 10, 1954." So, since it cannot be denied the contract contains no express provisions relating to where the money was to go if Bertha Ellsworth died during the probationary and/or trial period prescribed by its terms, it appears we are faced with the obligation of determining what was intended by the parties at the time of the execution of the agreement in the event of such a contingency.

Strange as it may seem, the question thus presented has been before the Courts on but few occasions. However, it has been decided under similar circumstances. An interesting discussion on the subject appears in 10 A. L. R. 2d., Anno., pp. 874, 875 § 12. It reads:

"Many entrance contracts provide for a probationary period during which the applicant for admission to the charitable home as well as the home itself can dissolve the agreement without cause. In case the applicant is refused permanent admission at the end of the trial period or withdraws during the

period of his own volition, all payments made, less a fixed weekly charge for the time he stayed at the home, are refunded to him and his property rights are restored.

"An interesting situation arises if the applicant dies during the probationary period without having been either accepted or rejected as a permanent inmate. The legal question then is whether or not the charitable home may retain the applicant's property on the ground that the agreement had not been dissolved by either party.

"In a majority of cases this question has been answered in the negative and it has been held that the home may not claim or retain the applicant's property, on the ground that the death of the applicant has made it impossible to determine whether he would have become a. permanent inmate at the end of the probationary period."

In connection with the foregoing quotation the author cites *The Evangelical Lutheran St. S. Cong. v. Bishop*, 213 Ill. App. 137; *Christenson v. Board of Charities*, 253 Ill. App. 380; *Kirkpatrick Home For Childless Women v. Kenyon*, 119 Misc. 349; 196 N. Y. S. 250, 196 N. Y. S. 475, 199 N. Y. S. 851, as supporting the conclusion reached by him in the concluding paragraph of his discussion and one case only, *Dodge v. Home*, 95 N. H. 472, 67 A. 2d. 10, as holding to the contrary. We may add our somewhat extended research of the books, including our own reports, discloses no other cases which can be regarded as decisive of the question presented under similar facts, conditions and circumstances.

Again reviewing the contract in the light of the heretofore stated rules, and mindful that appellant, not the decedent, prepared the involved contract, we are impelled to the view that a reasonable person, in the position of the decedent at the time of the execution of the contract, would have understood the provisions of that instrument to mean that unless and until she attained the status of a life member in the appellant's home she, or her estate, would be entitled to a return of the money paid by her for that right, less amounts specified in the agreement. Moreover we are convinced, that having prepared the contract, appellant's failure to make express provision therein for retaining the money paid by Bertha C. Ellsworth as a life membership fee, in the event of her death during the period of her probationary and/or trial membership status, precludes any construction of that agreement which would warrant its retention of such money upon the happening of that contingency.

After careful consideration of the decisions last above cited we have concluded those having the effect of holding, under similar

circumstances, that the appellant cannot claim or retain Bertha Ellsworth's lifetime payment for the reason her death made it impossible for her to determine whether she was to become a permanent inmate of the Home at the end of the probation period, are more sound in principle and better reasoned than the one case holding to the contrary. Therefore, based on the conclusions heretofore announced and on what is said and held in such decisions, we hold that the trial court did not err in rendering the judgment from which the Home has appealed.

Lest we be charged with overlooking it, we pause here to note, we regard *Old People's Home v. Miltner*, 149 Kan. 847, 89 P. 2d 874, relied on by each of the parties in support of respective claims regarding the propriety of the judgment, as clearly distinguishable and hence of no value as a precedent controlling issues involved in the case at bar.

Contentions advanced by appellant in connection with the overruling of its demurrer to appellee's evidence and the overruling of its motion for a new trial are the same as those heretofore considered, discussed and determined. For that reason further discussion of the propriety of such rulings is neither necessary nor required.

The judgment is affirmed.