No. 41,339

Marie Gardner, *Appellant,* v. Marvin Spurlock and Georgia Spurlock, *Appellees.*

(339 P. 2d 65)

Opinion filed May 16, 1959.

*A. A. Bryan* and *Robert H. Miller,* of Paola, were on the briefs for appellant.

*Oliver D. Rinehart* and *William D. Bright,* of Paola, were on the briefs for the appellees.

The opinion of the court was delivered by

Fatzer, J.: This was an action for specific performance of a written contract to repurchase certain farm land. Trial was by the court, and judgment was rendered for the defendants. The plaintiff has appealed from the judgment and the order overruling her motion for a new trial.

Pertinent facts are summarized and quoted as follows: The appellant, Mary Gardner, a widow in her eighties, was on January 11, 1957, and for many years prior thereto, the owner of 77 acres of land off the south side of the Southwest Quarter, Section 29, Township 16, Range 25, Miami county, Kansas. One Rogers held a mortgage upon the property and had secured a judgment in foreclosure; the land was advertised for sale by the sheriff, but had not been sold. There was another mortgage on the land in favor of a bank in Peculiar, Missouri.

Early in January, 1957, Marvin Spurlock went to appellant's home to discuss the foreclosure of the 77 acre tract. Appellant thought Spurlock wanted to loan her money. He testified he told her he was not in the loan business but wanted to buy her land. As a result of their negotiations appellant and Spurlock entered into a written agreement whereby appellant agreed to sell and convey the 77 acre tract to Spurlock for $5800, but reserved the right to the crops for the farm year 1957. The agreement further provided:

"It Is Further Agreed that the first party (appellant) shall have . . . until October 15, 1957, a first and prior option to repurchase said lands from second party for the agreed price of $6150, second party agreeing to convey to the first party, in case said option is exercised, by a Quit-Claim Deed and first party shall accept the title as it then is, second party making no warranty of title. The option shall be non-assignable by first party and no extension thereof shall be valid unless in writing and signed by the parties hereto. Second party agrees to create no encumbrance on said realty during the option period."

Appellee Georgia Spurlock, wife of Marvin, was not a party to the agreement.

Spurlock paid the purchase price of $5800 pursuant to the agreement by paying the judgment and costs in the foreclosure action of Rogers *versus* Gardner; the mortgage to the bank at Peculiar, Missouri, and the balance of about $1000 was paid to appellant in cash.

With respect to the option to repurchase, appellant testified

simply that, "I understood I could buy it (the land) back." Spurlock, however, testified that prior to the execution of the contract that, "I told her I either wanted the property for myself or wanted her to have it. . . . That if she would sell it to me and she get the money to buy it back within a certain reasonable period that I would sell it back to her *if she would keep it for her own,*" and she said, "that is just the way I want it."

During the first week in September, 1957, appellant listed the 77 acre tract for sale with D. A. Glenn, a realtor in Louisburg, Kansas. On October 3, 1957, Glenn sold the property to J. H. Phillips and his wife for $9725, the terms of which were set forth in a written contract between appellant and the Phillips. No reference was made in the Phillips' contract to the agreement between appellant and Spurlock or of her option to repurchase the land. The Phillips' contract provided for an outright purchase of the 77 acre tract from appellant and she agreed to convey the property to them by warranty deed.

Phillips deposited $500 as earnest money and gave Glenn a cashier's check issued by the Overland Park State Bank, Overland Park, Kansas, dated October 7, 1957, in the amount of $6150 payable to Marie Gardner and D. A. Glenn, Realtor. This cashier's check was endorsed by appellant and repeatedly tendered to Spurlock with the request he reconvey the land pursuant to their agreement.

On October 7, 1957, appellant, Glenn and some of appellant's friends went to Spurlock's home near Louisburg and appellant tendered to Spurlock the cashier's check for $6150 and requested that he and his wife reconvey the property to her. Spurlock replied that his wife did not have to sign the deed and he would do nothing until he saw his attorney, however, he agreed to meet them at the bank in Louisburg in a day or so.

On October 9, 1957, appellant, Glenn and her friends met with Spurlock in the directors' room of the bank. Glenn placed the cashier's check on the table in front of Spurlock and said, "If you will sign this deed (exhibiting a deed to be signed by both Spurlock and his wife) Mrs. Gardner will give you the *money* for this cashier's check. *It is right here.*" Spurlock said, "No, I won't sign it. My wife don't have to sign it and I want to talk to my attorney." Spurlock agreed to meet them again later the same week.

On October 11, 1957, the parties met in the office of appellant's attorney in Paola. Spurlock's counsel was present, but appellant was unable to climb the stairs so she waited in the car. Glenn told

Spurlock and his attorney that he had the cashier's check for $6150, which he took out of his pocket and said he would deliver it to Spurlock if he and his wife would sign the deed. Spurlock said, "Nothing doing, I won't sign"; Glenn asked "When will you sign," and Spurlock replied, "We will let you know Saturday or Monday." As in former meetings, Spurlock made no objection to the cashier's check nor did he at any time ask for cash.

Appellant and Glenn attempted to locate Spurlock on Saturday, October 12, 1957, and again on Monday, October 14, 1957, but could not find him. Spurlock testified he made no attempt to contact appellant or Glenn on October 14, 1957, and in fact was out of town and could not have been contacted in the Louisburg area on that date.

On Tuesday, October 15, 1957, appellant, Glenn and her friends went to Spurlock's home and had a conference with him. Glenn again exhibited and tendered the cashier's check and requested that both Spurlock and his wife execute a quitclaim deed to appellant. But, Spurlock refused. Glenn then exhibited a quitclaim deed prepared for Spurlock's signature alone and said, "You sign this yourself and we will sign this check over to you." Spurlock refused to sign the deed. Of this conversation Spurlock testified "The thing I had in mind was the 9 months was up and I had an interest here and I didn't feel like doing something that would jeopardize my interest."

Appellant first contends the trial court's findings of fact and conclusions of law reformed the contract between her and Spurlock, and argues this was error.

The trial court found, among other things, that the provision against assignment of the option agreement was "explained" by an oral "agreement" between the parties that if appellant wanted the land for herself Spurlock was to convey, otherwise he was to keep the land. The findings reads:

"The contract also carried the agreement that the option was not 'assignable' and the *explanation* was that *the parties agreed* that if she could repurchase for her own use, defendant would re-convey. If not, he was to keep the land." (Emphasis supplied.)

That finding was based upon an alleged conversation testified to by Spurlock only, which occurred prior to the time the written contract was entered into. Appellant contends the court modified and reformed the written contract by injecting into its finding oral state-

ments supposedly made by the parties prior to the time their agreement was reduced to writing.

The record does not disclose affirmatively that the trial court ruled on whether the contract was free from ambiguity, but its findings of fact and conclusions of law indicate it was the opinion of the court that the contract was ambiguous. But, being in writing, this court has the same duty as did the trial court to examine the instrument and determine the question (*Palmer v. Johnson,* 132 Kan. 161, 294 Pac. 874; *City of Wichita v. Boles,* 156 Kan. 619, 135 P. 2d 542.) The rule for interpretation of a written contract is well stated in *Morgan v. Wheeler,* 150 Kan. 667, 95 P. 2d 320, where it was held:

"The interpretation of a written contract, free from ambiguity, is a judicial function and does not require oral testimony to determine its meaning. Ambiguity in a written instrument does not appear until application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." (Syl. ¶ 1.)

Neither party contends that fraud was perpetrated in procuring the execution of the contract. In our opinion the portion of the contract here involved was clear and unambiguous and did not permit the introduction or consideration of oral testimony to vary or alter its terms—they clearly speak for themselves, and neither party could be uncertain or misunderstand their rights and obligations thereunder. It is well settled that when parties have oral negotiations and later enter into a written contract covering the subject matter, such contract evidences the final agreement of the parties and parol testimony of prior negotiations is not admissible and may not be considered by the court where the contract is complete, unambiguous and free from uncertainties. While this rule is well recognized and clearly established there are exceptions to it, but none are here pertinent (*Stapleton v. Hartman,* 174 Kan. 468, 471, 257 P. 2d 113; *Oliver v. Nugen,* 180 Kan. 823, 308 P. 2d 132; *Grace v. Martin,* 182 Kan. 33, 36, 318 P. 2d 1007). It is not the function of courts to make contracts, but to enforce them as made (*Anderson v. Rexroad,* 180 Kan. 505, 515, 306 P. 2d 137).

We conclude the court's finding above quoted that the appellant could only repurchase the 77 acre tract *if she kept it for her own use,* and if not, Spurlock was to keep the land, was erroneous. Under their contract appellant had the right until October 15, 1957, to

repurchase the land for $6150, and Spurlock had the obligation to reconvey the property by a quitclaim deed.

Appellant next asserts that her sale to the Phillips was not an assignment of her option to repurchase and the court's finding of fact and its conclusion of law in that respect were erroneous. The point is well taken. The court found that,

"The plaintiff and defendant had an agreement that it she wanted the land for herself he was to reconvey. Evidence of this agreement is fortified by the provision that the option was not assignable. When it developed that the plaintiff was not buying that for herself but had in fact sold it to Phillips, the defendant attempted to stand on his legal rights and would not sell unless compelled to do so. . . ."

Conclusion of law No. 7 reads:

"Plaintiff's sale to Phillips was a breach of her contract with defendant that either he or she would have the land."

In the first place, there is nothing in the record which suggests that Spurlock was ever contacted by, or dealt with, the Phillips. His dealings were entirely with the appellant. In the second place, their contract did not preclude appellant from selling the land in the event she exercised her right to repurchase; it provided only that the option to repurchase was not assignable. Appellant has made no attempt to assign her right to repurchase nor has she done so. On the contrary, she has sought since October 7, 1957, and here seeks to exercise the right to repurchase in her own behalf and not in behalf of anyone else. Inherent in the right to repurchase was full ownership of the land when exercised and as we have seen, her right in that respect was absolute until October 15, 1957, upon payment of the consideration specified, and was not contingent upon the further condition that either she or Spurlock keep the land. We are unable to find any competent evidence in this record upon which the court could base the above finding of fact and conclusion of law No. 7 that her contract with Phillips constituted an assignment of her option to repurchase which breached her contract with Spurlock.

Appellant next contends the trial court erred in finding there was no adequate tender because plaintiff offered a cashier's check instead of money, and that she failed to make a cash deposit into court not later than the time of trial, contrary to G. S. 1949, 60-751. In this connection the trial court found that:

"In a way of tender on all occasions there was used a cashier's check drawn by Overland Park State Bank in the sum of $6,150, payable to the

realtor and the plaintiff. . . . At the time it was endorsed by the realtor and it was stated that if defendant would sign the deed plaintiff would endorse and deliver to defendant. . . ."

The court then concluded:

"3. The tender of a check made to another party was not good.
"5. There was no tender on October 15th.
"6. A good tender would have been too late.
"8. There was no tender at time of trial and no evidence the previous attempted tenders were kept good."

Under the facts and circumstances, we think appellant's contention that her tender of the cashier's check as payment for the repurchase price of the land is meritorious. At no time did Spurlock object to the cashier's check when payment was tendered. In fact, at the meeting on October 9, 1957, in the bank at Louisburg the tender was that if he would cause a quitclaim deed to be executed, appellant would get him the "money." Where, as here, Spurlock, as optioner, made no objection to appellant's tender of the cashier's check in payment of the repurchase price of the land he waived his right to object to the medium of payment upon the ground that it was not legal tender. (*Diehr v. Thompson Chemicals Corp.* (Mo.) 281 S. W. 2d 572; *State of California v. Agostini,* 139 Cal. App. 2d 909, 294 P. 2d 769; *Myers v. Associates Discount Corporation,* 60 N. Y. S. 2d 691.) It was held in *Russell v. Ferrell,* 181 Kan. 259, 269, 311 P. 2d 347, that where a party gives a reason for his conduct he cannot after litigation has begun change his ground and put his conduct upon another and different consideration. In short, Spurlock may not now "mend his hold" and contend tender of payment by the cashier's check was insufficient. Under the record presented, he is estopped from doing so by a settled principle of law. (*Sandefur v. Hines,* 69 Kan. 168, 76 Pac. 444; *Heidner v. Hewitt Chevrolet Co.,* 166 Kan. 11, 14, 15, 199 P. 2d 481.) Furthermore, it is a well settled doctrine that a tender or demand otherwise indispensable is no longer required when its futility is shown (*Sherwin v. Baxter,* 86 Kan. 730, 121 Pac. 1128; *Smethers v. Lindsay,* 89 Kan. 338, 131 Pac. 563; *Grain Co. v. Elevator Co.,* 99 Kan. 712, 713, 163 Pac. 450).

The record before us reflects a continuous and honest effort by appellant to pay Spurlock the money due if he would reconvey the 77 acre tract. The record likewise reflects a consistent and groundless refusal by Spurlock to accept appellant's offer of performance and to discharge his obligations under their contract. As early as

October 9, 1957, appellant made a good and valid tender of performance of her part, but Spurlock attempted to attach new conditions to their original contract that either he or she would keep the land. His conduct throughout appellant's efforts to repurchase evidenced a repudiation of their contract, and the general rule is that where the exercise of an option contemplates tender of the purchase price as a part of the acceptance, repudiation of the contract by the optionor, in the face of readiness, willingness and ability to conform on the part of the optionee excuses tender during the time limit of the contract and entitles the optionee to all available remedies including specific performance. (55 Am. Jur., Vendor and Purchaser, § 40, p. 510, 511, note 24; *Mier v. Hadden,* 148 Mich. 488, 111 N. W. 1040, 118 Am. S. R. 586, 12 Ann. Cas. 88; Anno. 157 A. L. R. 1326.)

Previous to the trial Spurlock, on at least two occasions, filed motions to require appellant to deposit the proceeds of the cashier's check with the court. They were denied. At the commencement of the trial, Spurlock moved for judgment upon the ground that appellant had failed to comply with G. S. 1949, 60-751. Appellant advised the court "we now stand ready to make a deposit into court whenever the court will order us to do so. The plaintiff will pay into court at any time the court so orders." In considering the motion, the court said:

"Maybe we can do it with your first witness . . . There is one point in the case aside from this. It has to do, of course, with the tender and that is whether tender was necessary because of refusal to accept—in other words, making a tender futile. I will take under advisement the motion on the pleadings and let you introduce your first witness and see where we get."

At no time during the entire proceeding was there any doubt about appellant's willingness to pay the repurchase price into court if her contract with Spurlock was specifically performed. Under the facts and circumstances it was not necessary for appellant to tender into court the actual cash when she had pleaded that she was willing to pay it and had advised the court and Spurlock in open court that she would pay the money into court at any time the court ordered (*In re Estate of Marteney,* 163 Kan. 379, 183 P. 2d 210). In view of the foregoing we conclude that the trial court erred in its conclusions of law 3, 5, 6 and 8.

Other contentions have been made by the parties, but it would unduly extend this opinion to discuss and decide them in view of

conclusions heretofore announced which require a reversal of this case.

Our review of the record convinces us the trial court erroneously entered judgment in favor of Spurlock and his wife. In view of the foregoing, that judgment is reversed with directions to enter judgment in favor of appellant decreeing specific performance of the contract dated January 11, 1957, in accordance with the prayer of the amended petition.

It is so ordered.