No. 41,450

M. A. Zelinkoff and Beatrice B. Zelinkoff, *Appellees*, v. William C. Johnson and Ethel C. Johnson, *Appellants*.

(345 P. 2d 665)

Opinion filed November 7, 1959.

*Eugene G. Coombs*, of Wichita, argued the cause and was on the briefs for the appellants.

*H. W. Goodwin*, of Wichita, argued the cause, and *Guy L. Goodwin*, of Wichita, was with him on the briefs for the appellees.

The opinion of the court was delivered by

Wertz, J.: This was an action for specific performance of a written contract entered into between M. A. and Beatrice B. Zelinkoff, plaintiffs (appellees), and William C. and Ethel C. Johnson, defendants (appellants).

The pertinent facts may be summarized as follows: On May 24, 1956, plaintiffs and defendants formed a closely held corporation under the name of the Crown Chemical Corporation, Inc., the common stock of which was issued one-half to plaintiffs and one-half to defendants. At the time of forming the corporation and as a part of the same transaction, the parties entered into a written

agreement governing the investment each was making in the corporation and the issuance of stock to the incorporators, and providing for certain restrictions, rights and obligations relative to the subsequent sale and purchase of the corporate stock as issued to them. The controversy is over the interpretation of paragraph 8 of the written agreement.

Subparagraph (e) thereof provided that Johnson should have the right to exercise, between January 1, 1959, and January 1, 1961, an option to purchase Zelinkoff's corporate stock by notifying him in writing of his desire to do so, the purchase price to be determined by the book value of the stock at the time of notification and the stock to be paid for within a period of sixty days after the date of the notice of exercising said option.

Subparagraph (f) provided that upon the death of either Zelinkoff or Johnson outside the option period noted, the survivor should have the option to purchase all shares of the corporate stock owned by decedent by serving written notice on the legal representative of decedent's estate.

Subparagraph (g) provided that the unissued capital stock, if any, should not be sold prior to the time Johnson had the privilege of exercising his option to purchase the Zelinkoff interest as provided in subparagraph (e) above mentioned, unless the parties should mutually agree to issue such unissued capital stock as a bonus, or sell the same. In the latter event, the sale was to be made only to a Zelinkoff or to a Johnson.

Subparagraph (h) provided as follows:

"Zelinkoff and Johnson agree that as long as a Zelinkoff or a Johnson is a stockholder of this corporation no interest of either Zelinkoff or Johnson in said corporation of stock issued or to be issued, shall be sold or transferred to anyone outside the Zelinkoff or Johnson family. Family in this instance being defined as husband, wife, child or children of said Zelinkoff or Johnson.

"In the event of a sale by a Zelinkoff or a Johnson, as the case may be, other than as provided for in paragraphs (e), (f), and (g), of their respective interest, the Zelinkoff or Johnson, as the case may be, shall serve written notice on the other of their desire to sell, and the purchaser, Zelinkoff or Johnson, as the case may be, shall have a minimum of sixty (60) days from the date of determination of said value, to pay therefor, the price thereof, which price shall be the book value of said stock at the date of notification," said book value to be determined according to accepted accounting practices."

Early in December of the same year, dissension arose between plaintiffs and defendants. Zelinkoff advised Johnson that he, Johnson, would have to buy or he, Zelinkoff, would buy, inasmuch as

they "were at loggerhead with the business and . . . had to resolve it one way or another." Johnson said he would think about it. On December 28, the Zelinkoffs, having heard nothing further from Johnson, attempted to exercise their rights under paragraph 8 (*h*) and sent to defendants the following letter, which reads in pertinent part:

"Pursuant to our Agreement, dated May 24, 1956, . ᵛ . we, M. A. Zelinkoff and Beatrice B. Zelinkoff, desire to and do exercise our right to sell to you, as provided for in paragraph (*h*) of the Agreement, dated May 24, 1956, our ninety-five shares of the common stock of The Crown Chemical Corporation, Inc., the price for which and the payment thereof by you to be made as provided for in this paragraph."

Some two weeks thereafter and on January 16, 1957, defendants, through their counsel, in an attempt to exercise their rights under paragraph 8 (*h*) of the agreement, sent a letter to the plaintiffs, which reads in pertinent part:

"Reference is made to the Agreement made and entered into on the 24th day of May, 1956, by and between M. A. Zelinkoff and Beatrice B. Zelinkoff, his wife, and William C. Johnson and Ethel C. Johnson, his wife, . . . Reference is also made to your letter of December 28, 1956, addressed to Mr. William C. Johnson and Mrs. Ethel C. Johnson, which was sent by registered mail, return receipt requested.

"We represent Mr. and Mrs. Johnson and we are enclosing herewith a notification signed by William C. Johnson and Ethel C. Johnson notifying you in writing of their desire to sell all of the stock held by them in the Crown Chemical Corporation, Inc., Wichita, Kansas. In the event you desire to purchase said stock, they shall expect you to do so in accordance with the terms of said Agreement.

"On behalf of our clients, Mr. and Mrs. Johnson, we want it clearly understood that Mr. and Mrs. Johnson deny that according to the terms of the Agreement that they have any obligation whatsoever to purchase your stock, and that they do not desire to purchase the same. If you meant to imply that the Johnsons were under obligation to purchase your stock by your letter of December 28, 1956, then we believe you are attempting to read something in the Agreement which does not appear here."

On March 25, the plaintiffs brought this action against the defendants, seeking to recover the value of their stock on the theory that in view of their election to sell their stock to defendants, as evidenced by their letter of December 28, 1956, there was a mandatory obligation on defendants' part under paragraph 8 (*h*) to buy. Defendants answered, contending that paragraph 8 (*h*) contained no such mandate and that it provided only for a sixty-day option to buy; that they did not so elect and they should recover the costs of litigation.

On the issues thus joined, the question of the intent of the parties and the meaning of paragraph 8 of the contract was submitted to the trial court. The court found generally in favor of plaintiffs and entered judgment accordingly. In doing so, it is apparent the court, in interpreting the contract, found that paragraph 8 (*h*) imposed upon the defendants the obligation to buy plaintiffs' stock. From the judgment as entered, defendants appeal.

Plaintiffs first move to dismiss this appeal on the ground that defendants have acquiesced in the judgment of the lower court. We have examined the record and find no merit to this contention. No further comment is necessary.

We cannot bring ourselves to concur with the interpretation placed upon the instrument by the trial court. We have before us the same question as did the lower court and the one upon which it based its decision; *i. e.*, the one concerning the contractual obligations turning upon the intention of the parties as indicated by the language employed in the contract in question. We must therefore, as did the trial court, look to the instrument itself. (*Gardner v. Spurlock*, 184 Kan. 765, 769, 339 P. 2d 65; *Drilling, Inc. v. Warren*, 185 Kan. 29, 34, 340 P. 2d 919.)

The general rule in the interpretation of contracts is to ascertain the intent of the parties and to give effect to that intention if it can be done consistent with legal principles. This court has often held that the intent and purpose of the written instrument are to be determined by consideration of all pertinent provisions and not by a critical analysis of a single isolated provision. (*Drilling, Inc. v. Warren*, supra.) Where a court is called upon to construe a written instrument, reasonable rather than unreasonable interpretations are favored by the law, and results which vitiate the purpose or reduce its terms to absurdity should be avoided. (*Geier v. Eagle-Cherokee Coal Mining Co.*, 181 Kan. 567, 313 P. 2d 731.) It is not the function of courts to make contracts for the parties but to enforce them as made. (*Gardner v. Spurlock*, supra.)

The language of the instrument seems clear. Subparagraph (*e*) provides that Johnson shall have an option to purchase Zelinkoff's stock within a specified time. Subparagraph (*f*) provides that under certain conditions either Zelinkoff or Johnson shall have an option to purchase the other's stock. Subparagraph (*g*) again provides for an option to purchase under certain conditions. Subparagraph (*h*) does not use the word "option," but does say that in the event of sale of his interest by either a Zelinkoff or a Johnson, as

the case may be, other than as provided in subparagraphs (e), (f) and (g), Zelinkoff or Johnson shall serve on the other written notice of his desire to sell and the purchaser shall have a minimum of sixty days from the date of determination of the value to pay therefor. Consistency requires that subparagraphs (e), (f), (g) and (h) all contemplate that either party shall have an option but not an obligation to purchase.

It is obvious, when considering the contract as a whole, which we must do, that under subparagraph (h) the parties contemplate an option and not an obligation. There is no language in subparagraph (h) showing that any one stockholder agrees to buy or must buy when the other gives notice of his desire to sell. What it does say, in fact, is that if one of the parties desires to sell, the other party shall have a minimum of sixty days to determine whether he wishes to exercise his option to buy at the price determined under the contract. In other words, notice of desire to sell serves the function of setting the price at which the other party may buy.

In the instant case, both plaintiffs and defendants under subparagraph (h) served on each other notice of their intention to sell. It would be an absurdity if we were to hold subparagraph (h) imposed upon defendants an obligation to buy, inasmuch as defendants also served upon plaintiffs a written notice of their intention to sell. Such a holding would result in a stalemate and would make the provision meaningless. The question would then be—who is selling to whom? and who shall buy from whom? In the absence of express language in subparagraph (h) creating an obligation on the part of the defendants to purchase the stock, this court cannot supply language creating such an obligation. If we did so we would be making a new contract for the parties, and this we cannot do.

In view of what has been said, the judgment of the trial court is reversed and the case is remanded with instructions to enter judgment for the defendants.

It is so ordered.