No. 44,692

State of Kansas, *Appellee*, v. Michael Downey, *Appellant*.

(426 P. 2d 55)

Opinion filed April 8, 1967.

*J. J. Mangan*, of Dodge City, argued the cause, and *Jack Dalton*, of Dodge City, was with him on the briefs for the appellant.

*Donald E. Shultz*, of Dodge City, argued the cause, and *Robert C. Londerholm*, Attorney General, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Kaul, J.: This action stems from a controversy concerning a cash rental farm lease. There is little dispute as to the material facts. The farm land described in the lease comprises approximately 334 acres of pasture land and 220 acres of cultivated land. It is a part of the Fort Dodge Soldiers' Home and owned by the State of Kansas, appellee herein. The lease was prepared by the State and executed on July 15, 1963, by the State and Michael Downey, appellant. Portions of the lease, pertinent to our consideration, are as follows:

"Witnesseth, That Party of the First Part in consideration of the rents and covenants herein specified, does rent and lease to the said Party of Second

Part all of the following described land, situated in Ford County, Kansas, to-wit:

"334 acres more or less, pasture land; 185 acres, more or less, cultivated dry land, and 35 acres more or less, irrigable land of Section No. 4 and 34 Township No. 275, Range No. 24-W, in the County of Ford, State of Kansas, to hold the premises hereby leased unto the said Party of the Second Part for a term of one crop year beginning the 15th day of July, 1963, and ending the 14th day of July, 1964, on small grain land. Beginning December 1, 1963, and ending November 30, 1964, on all other land with the exception of the pasture land and the pasture season shall be limited to the normal pasture season which is from April 10th to September 20th of each year and no stock shall be kept in the pasture prior to April 10th or after September 20th. Party of the Second Part shall not have possession of any of the land for a period of longer than twelve (12) months.

. . . . . . . . . . . . .

"NINTH: It is further agreed between the Parties that the lessee shall have the option of renewal of said lease for one additional year, providing that such option shall be exercised and rentals paid in advance for one year by July 15th, 1964, and further Party of the Second Part agrees to notify the Party of First Part by written notice delivered personally or by registered mail on or before June 1, 1964, whether or not he wishes to exercise his right of option for the following year."

The lease further provided for the payment of an annual cash rental of $3,300 payable on June 20, 1963. A requirement was set out that the land be farmed, cultivated and maintained in proper and workmanlike manner.

The land described in the lease was bisected by U. S. Highway No. 154 which ran east and west through the premises. The pasture land (334 acres) and dry cultivated land (44 acres) lies north of the highway and is not involved in this controversy. The land involved here is all under cultivation and lies immediately south of the highway. It is bounded on the south by the Arkansas River and separated by the Fort Dodge buildings and improvements into two tracts. The west tract contains about 140 acres and the east tract about 35 acres.

The lessee, hereafter referred to as appellant or Downey, paid the cash rental for the first year (1963), exercised his option to renew for the additional year (1964), and paid the cash rental therefore.

On July 15, 1963, Downey received possession of approximately 35 acres of cultivated land, from which a wheat crop had been harvested by the prior lessee. The balance of the cultivated land was planted to row crop (ensilage, corn and sudan). The prior lessee harvested his row crop in November 1963 and relinquished

possession of this crop land several weeks prior to December 1, 1963, to Downey under a separate agreement whereby he was paid $100 by Downey.

We are unable to ascertain from the record exactly what crops were planted in 1963 on the land in dispute. It does appear, however, that some of it was sown to wheat in the fall of 1963 and some planted to row crop in the spring of 1964. Downey testified that it was all in sorghum on July 15, 1964, some of which was planted after harvesting the wheat.

In the fall of 1964, after the sorghum was taken off, small grain was sown on all of the land in dispute, part of it was sown to wheat in the fall and the balance was sown to oats in the spring of 1965. In the spring of 1965 all but about 40 acres of wheat was destroyed by a flood of the Arkansas River. Between July 1 and July 15, 1965, Downey planted all of the disputed land to row crop, except the 40 acres from which he harvested wheat. He admitted that Arthur Rose, Superintendent of the Kansas Soldiers' Home, objected at the time he started to plant on July 1, 1965. Nevertheless, Downey proceeded to plant about 125 to 130 acres of row crop.

On July 15, 1965, appellee commenced this litigation by filing a petition in the nature of ejectment and alleged:

"The petitioner has a legal interest in the following described real property and has the immediate right to possession thereof, to-wit:

"All land sowed to small grain and harvested in 1965 included in Section Four (4) and Thirty-four (34), Township Twenty-seven (27) South of Range Twenty-four (24) West in Ford County, Kansas.

"That the defendant has refused to surrender the same.

"WHEREFORE, Plaintiff prays judgment for possession of said real estate and costs."

Appellant answered as follows:

"Comes now defendant Michael Downey and for answer to the petition of plaintiff denies that plaintiff has the right to possession of said real property. Further answering this defendant alleges that he is in possession of said real property under a written lease a true copy of which is hereto attached marked Exhibit A; that he is legally entitled to possession of all of said real property described in said exhibit except approximately 37 acres thereof until December 1, 1965."

The action was tried to the district court on July 27, 1965. The evidence presented consisted of the written lease, the testimony of Arthur Rose, Superintendent of the Fort Dodge Soldiers' Home, and the testimony of Downey. Judgment was entered by the trial court on August 12, 1965. Specific findings of fact and conclusions

of law were not made by the trial court. Its judgment consisted of a general finding that appellee, the State of Kansas, was entitled to immediate possession of the land sown to small grain for the 1965 crop year. Downey filed a motion for a new trial which was heard on August 29 and overruled on August 31, 1965. Thereafter this appeal was duly perfected.

Appellant's principal contention is that the lease agreement is ambiguous and that the rule of strict construction should apply against the state as it is conceded the state drew the lease. The appellant argues that since all of the land involved in the controversy was in row crop and none in small grain as of July 15, 1964, the commencement date of the additional year, he was entitled to possession until December 1, 1965. In other words, it is appellant's position that, since he did not secure possession of the 135 to 140 acres of row crop land in dispute until December 1, 1963 (except by the separate agreement with the prior tenant for which he paid $100 consideration), he was entitled to a full 2-year possession thereof because he had paid in full the annual cash rental for two years. As indicated in Downey's answer, he surrendered 37 acres, the approximate equivalent of the acreage he secured possession of on July 15, 1963.

The appellee contends the issue is moot and the appeal should be dismissed since, in any event, appellant's right of possession terminated on December 1, 1965. The appellee further contends that if not a moot case requiring dismissal then the lease by its terms is limited to one crop a year rather than to possession for a full year, as claimed by appellant.

The appellee filed a motion to dismiss the appeal which this court overruled on February 22, 1967, granting leave for appellee to renew at the hearing on the merits. In support of its motion to dismiss, appellee relies on the case of *Leander v. Main,* 140 Kan. 610, 38 P. 2d 319. *Leander* was an action in forcible detainer commenced in justice court. It is not in point with the issues presented here.

Even though appellant's right to possession is no longer an issue since, in any event, the leave would terminate on December 1, 1965, it cannot be said the appellant's right to his unharvested row crop is not a vital right. In *State, ex rel., v. Engler,* 181 Kan. 1040, 317 P. 2d 432, we held:

"Although, upon appellate review, it appears that no order referring to the

specific issue presented would be directly effectual because a period of time involved has expired or because other circumstances have changed, the appeal should not be dismissed as being moot if by leaving the judgment unreversed vital rights of the parties would thereby be affected." (Syl. ¶ 1.)

Appellee further contends that appellant, by surrendering possession after the trial court's judgment and by failing to post a supersedeas bond, acquiesced in the judgment and thereby forfeited his rights. In this connection it is to be noted the appellant instituted a timely attack on the district court's judgment by filing his motion for a new trial and perfecting this appeal. We believe appellant's rights were preserved by his timely action. In *State v. Johnston,* 78 Kan. 615, 97 Pac. 790, this court stated:

"The proper manner for parties and their counselors to test the validity of an order of court is not to defy the order, but to move, in the court which issued it or in some court having supervisory jurisdiction, to have it set aside. . . ." (p. 618.)

For the reasons stated, we believe appellant has a right to be heard on this appeal.

We turn now to a consideration of the merits. We first pause to note there is no dispute that wheat and oats are small grain within the phrase "small grain land," as used in the lease, and that all of the row crops planted by appellant are considered within the provision for "all other land," the term for which was from December 1 to the following November 30. Basically, appellant contends that since he paid a full 2-year cash rental he is entitled to a full 2-year possession, while appellee asserts that the term of possession is controlled by the kind of crop planted. Therefore we believe the language of the lease in this regard requires interpretation for the reasons to be hereinafter stated.

In this connection it is to be noted that when confronted with the construction of an instrument, such as the lease before us here, our obligation is not to consider isolated provisions but to consider and construe the instrument in its entirety. (*First National Bank of Lawrence v. Methodist Home for the Aged,* 181 Kan. 100, 309 P. 2d 389; *Lawrence v. Cooper Independent Theatres,* 177 Kan. 125, 276 P. 2d 350.) We are also mindful of the often stated rule that ambiguity in a contract does not appear until application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two, or more meanings is the proper one. (*Klema v. Soukup,* 175 Kan. 775, 267 P. 2d 501; *Morgan v. Wheeler,* 150 Kan. 667, 95 P. 2d 320.)

Our examination of the lease reveals that in the second part of the first paragraph quoted heretofore there is some indication that possession was to be limited to one crop a year, as claimed by appellee. While, on the other hand, under the provisions of the ninth paragraph the option of renewal was for one additional year and that if such option was exercised rentals were to be paid in advance for one year. It is further noted that the possession provided for in the last sentence in the second part of the first paragraph is for a period of not longer than twelve months. On scrutinizing the lease in its entirety it becomes apparent the provisions for terms of possession are susceptible of different interpretations. This being the case we must proceed to construe the lease pursuant to applicable rules to be adhered to in the construction of a contract where its terms are ambiguous, obscure or susceptible of more than one meaning. The rules and the application thereof to be considered in construing an ambiguous agreement are fully set out and discussed in the case of *First National Bank of Lawrence v. Methodist Home for the Aged,* supra. The long line of cases in which such rules are stated and applied are cited and discussed in that opinion and need not be restated. For our purposes here, we note in particular, the rule of universal application that doubtful and uncertain language in a contract is construed against the party preparing the instrument.

Applying the rules of construction, heretofore mentioned to the instrument before us, we construe the terms of the lease in question to mean that when Downey paid the annual cash rental in 1963 he was entitled to a full year's possession, commencing July 15, 1963, as to small grain land (35 to 40 acres) and a full year's possession of the row crop land (125 to 130 acres), commencing December 1, 1963. In June of 1964, when Downey exercised his option for an additional year and paid the cash rental theretofore, he became entitled to an additional full year's possession, commencing July 15, 1964, of the small grain land and an additional full year's possession, commencing December 1, 1964, of the row crop land.

It follows therefore that Downey was entitled to possession of the row crop land in question until December 1, 1965, during which time he could have harvested the row crop thereon.

The judgment is reversed.

KAUL, J. (dissenting): In my opinion the lease in question is not

ambiguous. The terms of possession were specifically spelled out according to the crops which the tenant might elect to plant.

It is my view the import of the language used in the habendum clause of the lease limited the tenant's possession rights to one crop a year. The only logical reason for inserting the specific commencement and termination dates of possession for small grain and row crop land was to expressly limit the use of such land to one crop a year. The tenant, of course, had the right to elect to plant row crop in the spring and retain possession until the following December 1 or he could plant wheat in the fall and retain possession until the following July 15.

In my view the language used expressly prohibits what the tenant has attempted to do in the instant case, i. e., sow wheat in the fall and harvest soon enough to have a row crop planted by July 15, thereby extending his possession until the following December 1, and reap the benefit of two crops instead of one.

The ninth paragraph of the lease merely provides for the renewal of the lease for an additional year, subject to other terms of the lease with respect to possession. In my opinion it does not vary or contradict any of the terms of possession specifically set out in the habendum clause. I would affirm the judgment of the trial court.