No. 45,977

G. Credit Company, a Corporation, *Appellee*, v. Mid-West Land Development, Inc., a Corporation; Jesse W. Burge; Glen Hinderliter and Evelyn Hinderliter, *Appellants*.

(485 P. 2d 205)

Opinion filed May 15, 1971.

*John J. Gardner*, of Gardner and Davis, of Olathe, argued the cause and was on the brief for the appellants.

*Neal Hambleton*, of Olathe, argued the cause, and *Leon G. Kusnetzky*, of Kusnetzky and Partin, of Kansas City, Missouri, was with him on the brief for the appellee.

The opinion of the court was delivered by

Hatcher, C.: This is an appeal from a judgment in an action to foreclose a mortgage made by a lessee under a subordination agreement executed by the owners of the fee title.

The facts may be summarized.

The appellants, Glen and Evelyn Hinderliter, were fee owners of the Ranch Inn property in Johnson County. The entire tract consists of approximately three acres. The tract in question is the unimproved north 160 feet. The Ranch Inn Restaurant is on the south portion of the tract.

On June 1, 1964, the Hinderliters, as lessors, executed a lease to Jesse W. Burge on the 160 foot tract for a term of 21 years with option to renew for two 7 year terms. The purpose of the lease was for the construction of a motel upon the tract.

The lease contained a subordination agreement which read:

"The landlord covenants that it is the present owner of the leased premises and hereby subordinates the fee title to the above described leased property to any mortgage to be entered into by the tenant for purposes of financing the improvements to be placed upon said property, and the landlord agrees to execute necessary instruments to accomplish subordination of the fee title. Further, this lease is subject and subordinate to any such mortgage. Provided, however, that any such mortgage shall not exceed $560,000.00 in principal amount, and the same together with interest shall be paid out by the end of the eighteenth year from the beginning of the term of this lease."

On June 10, 1964, Burge assigned the lease to the Mid-West Land Development, Inc., a Colorado corporation.

Although the lease was not filed of record, on June 29, 1964, a memorandum of the lease was filed with the register of deeds, which stated in part:

"According to the terms of the lease above-described, the landlord does hereby subordinate the fee title to the above-described leased property to any mortgage to be entered into by the tenant for the purpose of financing the improvements to be placed upon said property, said mortgage, however, not to exceed $560,000.00 in principal amount and the same together with interest shall be paid out by the end of the 18th year from the beginning of the term of this lease."

On July 10, 1964, Mid-West Land Development, Inc., obtained a loan from the Suburban Bank and Trust Company in Kansas City, Missouri, in the amount of $20,000.00 and executed a mortgage upon the leased tract to secure the same.

Mid-West Land Development, Inc., secured a second loan from the Suburban Bank and Trust Company on October 10, 1964, in the amount of $10,000.00 and executed a mortgage on the leased premises to secure the same.

On April 5, 1966, judgment was entered cancelling the lease for non-payment of rent.

On April 8, 1966, the two mortgages mentioned above were assigned by the Suburban Bank and Trust Company to the G. Credit Company. The assignment was recorded January 31, 1968. On February 2, 1968, G. Credit Company brought an action to foreclose both mortgages.

The defendants answered stating in part:

"These defendants further state that they have knowledge of the instruments (Exhibits B and C of plaintiff's petition), however gained knowledge of the same sometime after the instruments were placed of record as purported liens against the real property described therein.

"These defendants did not execute the notes which the mortgages purport to secure, and no consideration passed to these defendants by reason of the execution of said notes and mortgages. Further, these defendants are not indebted to the plaintiff or their assignor.

"The maker of the purported mortgage had no right or authority to mortgage the defendants' property."

The trial court found that the proceeds from the two notes totaling $30,000.00 were disbursed as follows:

"Congress International, Inc. for motel franchise ................$10,000.00
Hains Engineering Corporation for engineering service .......... 2,765.00
J. W. Burge ......................................... 250.00
J. W. Burge ......................................... 5,750.00
Missouri Realty & Investment Co. ........................... 183.05
H. R. Smith Investment Company .......................... 600.00
Investors Title Company, Inc. ............................. 51.95
Glenn E. Hinderliter and Evelyn Hinderliter ................. 8,400.00
Hains Engineering Corporation ........................... 1,500.00
Sam McCaffree, Agent .................................... 55.45
Retained by Suburban Bank as a loan fee ................... 400.00"

The trial court made findings of fact in substance the same as those heretofore presented and concluded in part:

"The court concludes that the assignee of the lessee of the subordinated lease had the right to negotiate for loans for the purpose of financing improvements upon said ground in the total amount of not to exceed $560,000.00, and to be payable within a certain time.

"The court finds that the assigned lessee executed two notes and mortgages on the property for the sum of $30,000.00 for the purpose of financing the motel to be constructed on the subordinated fee title.

. . . . . . . . . . . . . .

"However, the court finds that the mortgagee did see to it that the said sums were used primarily for incidental preliminary expenses to the actual construction of a motel.

"The court is of the opinion that the clear intent of the subordination as stated in the memorandum, to-wit: 'For the purpose of financing the improvements to be placed upon said property' does include the cost of incidental and preliminary expenses prior to actual construction.

. . . . . . . . . . . .

"Plaintiff is the holder of valid mortgages upon the fee title to the land described in the plaintiff's petition. Plaintiff is entitled to judgment in rem against the property described in the plaintiff's petition for the sum of $20,-000.00 with interest at 6% per annum from July 10, 1964 until July 10, 1965,

and interest at 8% thereafter, and is entitled to judgment in rem for $10,000.00 with interest at 8% from October 10, 1964. That the mortgages should be foreclosed and redemption is fixed at six months from the date of sale."

The landowners have appealed.

The appellants take issue with the trial court's conclusions that (1) the clear intent of the language in the subordination agreement and the memorandum filed, to-wit: "for the purpose of financing the improvements to be placed upon said property" includes the cost of incidental and preliminary expenses prior to actual construction, and (2) the proceeds of the mortgages were used primarily for incidental preliminary expenses prior to the actual construction of a motel. Appellants also contend that the lessors, the fee owners, must also sign the mortgage instrument if it is to be subordinated as to them.

We start with the proposition that appellants, by the execution of the lease, voluntarily surrendered certain rights which theretofore were theirs alone. What that surrender encompassed is to be divined by determining the intent of the parties as manifested in their contract of lease. In construing contracts, intention is controlling and will be given effect if consistent with legal principles. (*Hays v. Underwood, Administrator*, 196 Kan. 265, 411 P. 2d 717; *Stevens v. Farmers Elevator Mutual Ins. Co.*, 197 Kan. 74, 415 P. 2d 236.) Reasonable interpretations of all pertinent provisions of a contract, and not critical considerations of single isolated provisions, are required by the law. (*Zelinkoff v. Johnson*, 185 Kan. 489, 345 P. 2d 665. Also, a lease is to be construed as an entirety. *State v. Downey*, 198 Kan. 564, 426 P. 2d 55.)

With these rules in mind we will consider first appellants' contention that the lease contract anticipated that the fee owners would also sign the mortgage contract in order to give the lender priority. We see no merit in the contention.

The memorandum of the lease recorded in the register of deeds office, which was the instrument giving a lender notice of the terms of the lease, made no reference to any condition that the fee owners had to sign the mortgage instrument. By the terms of the lease the landlord merely agreed to execute necessary instruments to accomplish subordination of the fee title, if asked to do so by the lender. Their signature was not made an express condition to giving the lender priority, nor of the lessee's right to mortgage.

True, "the landlord agrees to execute necessary instruments to accomplish subordination of the fee title" if asked to do so but

there was no necessity for the execution of a mortgage if it fell within the provisions of the subordination agreement. If the landlords intended that all subordinated mortgages be executed by them they could have said so in much simpler language.

We now reach the question—does the phrase "for purposes of financing the improvements to be placed upon said property" include the cost of incidental and preliminary expenses prior to actual construction?

We are advised by the language in the lease that the improvement contemplated was the construction of a motel. We may, therefore, simplify the issue somewhat by presenting the question—does the financing of a motel include the cost of incidental and preliminary expense prior to the actual construction?

We are inclined to think that it does. Anyone proceeding with the construction of a motel would know that there would be necessary expense incidental and preliminary to actual construction and that such expenses must be financed. Anyone financing the construction of a motel would know that there would be preliminary expenses which would not show on the land such as fees for engineering and architectural plans and specifications, lease rental and interest during construction, etc.

Appellants rely on *Cambridge Ac. Corp. v. American Natl. Mot. Inns, Inc.*, 96 N. J. Super. 183, 232 A. 2d 692. Although the basic facts are similar, the case is not persuasive here because the court found that proof of the use of the money derived from the mortgage was meager and unconvincing. Also on appeal, the Superior Court of New Jersey, appellate division, disapproved much of what was said in the first opinion in *Cambridge Acceptance Corp. v. Hockstein, 102* N. J. *Super.* 435, 246 A. 2d 138.

In the case before us, the trial court found that "the mortgagee did see to it that the said sums were used primarily for incidental preliminary expenses to the actual construction of a motel." There is nothing in the record that would justify us reaching a different conclusion.

The money derived from the mortgage having been used primarily for necessary preliminary expenses incidental to the actual construction of a motel and the lease having subordinated the landlords' fee title to such a mortgage, we find no basis for disturbing the judgment of the trial court.

What has been said eliminates the necessity of discussing the

propriety of the conclusions of the trial court raised by appellant but not here presented by us. Neither need we consider other issues raised by the parties in their briefs.

The judgment is affirmed.

APPROVED BY THE COURT.

SCHROEDER, J., dissenting: The construction of the subordination agreement by the court permits the perpetration of a fraud by the lessee on the facts in this case.

Here the subordination agreement contemplated by its language but *one* mortgage "for the purpose of financing the improvements to be placed upon" the real property. The memorandum of the lease *filed with the register of deeds* referred to *"said mortgage,* however, not to exceed $560,000.00 in principal amount. (Emphasis added.) Here two mortgages were already executed in the total sum of $30,000 and construction had not commenced.

None of the funds advanced changed the nature of the real property in the slightest particular. They were all expended for purposes which may be described as "water" insofar as any tangible improvement to the property is concerned.

Some of the specific items found by the trial court to have been paid from the proceeds of the two notes are clearly not incidental to the construction of improvements on the land—for example, the payments to J. W. Burge, which the record discloses were for living expenses. Another example is the funds paid to the Hinderliters in the sum of $8,400 for rent. Another questionable item is the payment in full of $10,000 for a motel franchise before there was any assurance that a motel would be constructed.

In my opinion it was the intention of the parties to the subordination agreement, if a mortgage was to be executed, that the landlord approve the mortgage in writing. This is found in the provision that "the landlord agrees to execute necessary instruments to accomplish subordination of the fee title." It is conceivable the builder on the premises could improve the property by erecting a motel without resort to mortgage financing. If it was unnecessary to resort to mortgage financing then, of course, the landowner would not be asked to execute such instruments. For this reason I feel the court has placed too much reliance upon the provision that the agreement of the landlord to execute the necessary instruments to accomplish subordination of the fee title be conditioned upon the request that the landlord be asked to do so.

It is respectfully submitted the judgment of the lower court should be reversed.

FATZER and O'CONNOR, J. J. join in the foregoing dissent.