No. 36,592

BELLE MUENZENMAYER, *Appellee*, v. (HENRY LUKE, JR., if living, and if dead, his unknown heirs, executors, administrators, devisees, trustees, and assigns; the unknown heirs, executors, administrators, devisees, trustees and assigns of GRACE LUKE, deceased; and the CENTRAL NATIONAL BANK OF JUNCTION CITY, *Appellees*), LUCILLE McFARLAND, *Appellant*.

(170 P. 2d 637)

Opinion filed July 6, 1946.

R. J. Reynolds, of Topeka, was on the briefs for the appellant.

Roy W. Cliborn, of Junction City, argued the cause for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action to cancel a contract pertaining to real property. From a decree favorable to plaintiff an appeal has been taken.

The pertinent facts disclosed by the record may be stated as follows: On July 15, 1940, George E. Muenzenmayer and Belle Muenzenmayer, his wife, of Faulkner county, Arkansas, were the owners of the east fifty feet of lot 7, block 23, in Railroad Addition to Junction City, house number 118 East 16th street, on which was situated a five room cottage, modern except furnace. They entered into a contract with Henry Luke and Grace Luke, his wife, as second parties, by which upon their payment of $100 in cash they had the right to go into possession of the property, and they agreed to make necessary repairs at their own expense, to pay all water, gas and light bills when due, and to make further payments for the use of the property of $18 per month, beginning August 1, 1940. It was agreed the second parties should have an option to purchase the property at any time they were not in default on payments for the sum of $1,500, and if they did so that they should be credited with all payments made in excess of taxes on the property, premiums on insurance policies in the amount of $1,500 thereon, and interest at six percent per annum on the unpaid balance, and if such payments were made the first parties would deliver to them a warranty deed for the property and an abstract showing merchantable title. It was agreed that the second parties should not acquire any title, legal or equitable, until full payment was made; that "time is the essence of this agreement," and if default should be made in payments the first parties, at their option, could declare the agreement void; and in that event the second parties agreed that all payments made should be considered as rent and that they would give peaceable possession within ten days after notice to vacate. This contract, together with the deed to the property, was placed in a bank at Junction City, where the payments were to be made. Thereafter George E. Muenzenmayer died and by decree of the probate court his wife became the owner of all his property. Also, a few months

after the contract was executed Henry Luke became ill and was taken to a hospital. His wife, Grace Luke, continued to make the payments, with some defaults, until her death in December, 1943. They had no children. Her mother, Lucille McFarland, of Kansas City, attended her funeral and soon thereafter went into possession of the premises described in the contract. She went to the bank to see if she could continue the payments. After conferring with plaintiff's attorney the banker told her that she might do so. Thereafter she made several payments. By August, 1945, payments aggregating $162 were in default. In some instances payments had been received after default. On August 3, 1945, plaintiff, through her attorneys, addressed a notice to Henry Luke, and a duplicate to Lucille McFarland, of these defaults, specifying the dates of each and notifying them that unless the sum of $162 was paid within twenty days suit would be brought to set aside the contract and declare a forfeiture of their interest therein as well as their interest in the real estate, and further giving notice that thereafter payments would have to be made in accordance with the terms of the contract. These notices, enclosed in separate envelopes, were mailed to them at the address, 118 East 16th street. Payment not having been made, this action was brought. At that time plaintiff did not know any other address for Henry Luke and obtained service upon him by publication. Service was had upon Lucille McFarland. The bank was made a party in order to have the deed and contract returned to plaintiff. Lucille McFarland filed an answer which contained a general denial, except an admission of the execution of the contract sued upon, and alleged "that this defendant claims some right, interest and possession in the real estate involved." Her attorney also filed an appearance for Henry Luke as his next friend. Later the court permitted that to be withdrawn at the request of the attorney because he doubted his authority to make such an appearance. Later plaintiff was advised that Henry Luke was in a government hospital in Knoxville, Iowa, for a mental illness, although he never had been adjudged insane or incompetent. Being informed of this situation the court appointed U. S. Weary, a competent, reputable attorney of Junction City, as guardian *ad litem* for Henry Luke. He filed an answer, as required by statute, (G. S. 1935, 60-408) and further objected to the sufficiency of the notice served upon him by plaintiff.

At the trial Mr. Weary informed the court that upon the death

of Grace Luke he was consulted by friends of Mr. Luke who were members of the colored American Legion to see if some way could be found by which the property might be preserved for the benefit of Mr. Luke. He learned the Lukes had no children and upon the death of Mrs. Luke Mr. Luke became the sole owner of their interest in the property. He found there was no money to keep up payments or make any delinquent payments. Apparently Mr. Luke had been a sergeant in the army and when he became ill was entitled to treatment in a veterans' hospital, where he was sent. No guardian had ever been appointed for him and his only property, so far as could be learned, was his interest in this property. There was some colloquy between court and counsel as to whether the contract should be regarded as an option to purchase in view of the payments which had been made upon it and also as to whether the notice of August 3, 1945, had been received by Mr. Luke. Facts were stated which would indicate that it had been received. There was further discussion as to whether it was sufficient under the circumstances. Plaintiff's counsel suggested a willingness for plaintiff to pay into court for the benefit of Mr. Luke the sum of $300 and also to pay the court costs, if the court considered that equitable, and have the contract cancelled. While Mr. Weary was in no position to make an agreement along that line he did express the view that such a disposition of the case might be for the best interests of Mr. Luke.

Lucille McFarland testified that she was living in the property in question; that her daughter, Grace Luke, died December 12, 1943; that the witness buried her the following Thursday and went back to her home (in Kansas City) to see about her house and the things she was buying, and turned the house back and returned to Junction City about the first of the year 1944 and since then has lived on the premises in controversy; that she found the contract to purchase and insurance papers with the next door neighbor, who stated, "Grace is back with the contract"; that she talked with the banker, who after calling Mr. Platt, plaintiff's attorney, told her it was all right for her to make the payments on the contract; that she made most of the payments through 1944 and one in June, 1945, in an amount aggregating close to $300; that if Mr. Luke was given an opportunity to catch up on his contract she would be willing to make the payments and would pay out the whole contract even though she knew that the deed would go to Mr. Luke; that she believed his

people could be found; that she had been told he had a sister in Macon, Ga.; that she helped with papering and to clean the house inside; that new bathroom fixtures had been installed and that the faucets and sink in the kitchen were new, and that she put a fence in the back. She had paid no rent to Mr. Luke.

In its decree the court approved the service of summons by publication upon the defendant Henry Luke, and specifically found that plaintiff was the owner of the record title to the real estate involved; that Henry Luke and Grace Luke, his wife, went into possession of the property pursuant to the contract pleaded; that they were in default of payments under the terms of the contract; that Henry Luke and Grace Luke had no children, natural or adopted; that since the execution of the contract Grace Luke had died and that Henry Luke was her sole and only heir; that a bona fide controversy exists concerning the legal character of the contract and the rights of the parties arising therefrom; that plaintiff offers, as a matter of compromise, that if possession of the real property be restored to her she will pay into court, for the benefit of the defendant Henry Luke, the sum of $300 and pay the costs of this action; that the guardian *ad litem* of Henry Luke, in consideration of the controversy mentioned concerning the legal character of the contract and the difficulties of redeeming the property should the court grant a period of redemption, recommends to the court that such offer be accepted and approved. The court specifically found that the offer of compromise is fair and equitable; that it is to the best interests of the defendant Henry Luke, and that the same should be approved, and "that defendant Lucille McFarland has no right, title, interest, lien, or estate in, to, or on said real estate, and plaintiff is entitled to possession and to have her title to said real estate quieted as against any pretended right, title, interest, lien, or claim on estate asserted by said defendant Lucille McFarland in and to said real estate."

Judgment was rendered in harmony with these findings and plaintiff was ordered to pay the costs of the action, including a guardian *ad litem* fee. Plaintiff paid into court $300 for Henry Luke and the court costs of about $125.

Lucille McFarland filed a motion for a new trial, which was duly considered by the court and overruled, and she alone has appealed.

Appellee contends that appellant is entitled to be heard only upon that part of the decree which pertains to her. The point is well taken. Her attorney filed an appearance for Henry Luke as

his next friend and by leave of court withdrew it. The court appointed for Henry Luke a guardian *ad litem*, who filed an appropriate answer and appeared for him throughout the trial. The decree, insofar as it pertained to Henry Luke, was so favorable to him that the guardian *ad litem* did not appeal.

The appellant was made a party defendant for the reason that she was in possession of the property. She filed an answer that she "claims some right, interest and possession" of the property, without specifying what right or interest she had. Her testimony disclosed that she went into the property when it was vacant, while Henry Luke, the sole owner of the right of possession under the contract with plaintiff, was in a hospital in another state. She made no claim of having any authority from him to do so. She testified she knew where he was, but did not testify to having communicated with him in any way, directly or indirectly. Her counsel argues that the family relation was such as to justify her going into possession of the property and caring for it and making payments on the contract, but such possession gave her no title or interest in the title. We are not familiar with any rule of law, and none has been cited to us, which goes so far as to sustain a holding that a mother-in-law may acquire title to her son-in-law's property by taking possession of it without his knowledge simply because it is vacant. Her counsel argues that plaintiff is estopped from denying her some interest in the title by reason of the fact that she made some payments upon the contract with the consent of plaintiff's attorney. There are at least two answers to this contention. *First,* estoppel was never pleaded by appellant. *Second,* there is no showing that plaintiff's attorney knew she was making these payments with her own money as distinct from paying with funds of Henry Luke. Even if it could be held that she acquired some interest in the title by reason of her voluntary possession and the making of payments, some of the payments which accrued while she was in possession were in default, as well as some of them prior to the time she went into possession. The notice of August 3, 1945, was given to appellant as well as to Henry Luke. She received the copy addressed to her and does not contend otherwise. She made no effort to reinstate the contract by paying the defaulted sums prior to the time the suit was brought, nor, indeed, at any time. So any interest in the property which

she may have acquired was cut off by the notice to her, her failure to pay defaults, and the decree of the court.

Counsel for appellant argues that appellant was a proper person to raise issues concerning Henry Luke's rights, and argues that the notice to Henry Luke was insufficient and that the court abused its discretion in approving the settlement offered for Henry Luke. As we have seen, she did not attempt by her pleadings to represent Henry Luke. The temporary effort of her attorney to act for Luke was abandoned, and a guardian *ad litem* was appointed, who acted for him. In addition to that the points suggested by appellant's counsel with respect to the rights of Henry Luke are not well taken.

We find no error in the record. The judgment of the court below is affirmed.