No. 43,890

STAR LEASING CORPORATION, *Appellant,* v. PAUL ELLIOTT, *Appellee.*

(398 P. 2d 566)

Opinion filed January 23, 1965.

*Ronald Kaarbo,* of Liberal, argued the cause, and was on the briefs for the appellant.

*James R. Yoxall,* of Liberal, argued the cause, and *Auburn G. Light,* of Liberal, was with him on the briefs for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This is an action brought by the plaintiff and appellant herein, Star Leasing Corporation, against the defendant Paul Elliott, appellee, to recover on a promissory note on which plaintiff claims there is a balance due of $1,937.28. The note was executed by Power, Inc., acting through Paul Elliott, its president, and was also signed by Paul Elliott individually. The appellant will be designated as plaintiff, and the appellee as defendant, or Elliott.

An answer and cross petition was filed by defendant alleging that he was entitled to additional credits on the note over and above those shown, that the note was overpaid by $890.30, and that he should recover such amount.

Over the plaintiff's objection, trial was commenced to a jury. The defendant stipulated that he had executed and delivered the note, and proceeded to introduce evidence in support of his cross petition. A demurrer to his evidence was overruled and evidence was thereupon introduced by plaintiff. At the completion of all the evidence, plaintiff moved for a directed verdict which was overruled. However, at the same time, the trial court sustained plaintiff's motion to discharge the jury.

Thereafter, the court found in defendant's favor on his cross petition and on June 7, 1963, entered judgment for the defendant in the amount for which he prayed. Plaintiff's motion for a new trial was argued and overruled on October 11, 1963, and this appeal was taken by the plaintiff within two months therefrom, although some five months after the judgment was entered on June 7th.

We are first confronted with the defendant's motion to dismiss the appeal because it was not perfected within two months from the date of judgment, it being contended that the appeal time was not extended by the motion for new trial because no factual questions were involved. Although the dispute in this case centers primarily around questions of law, a considerable amount of evidence was introduced, and we are unable to say that no factual questions inhere in the questions presented. We shall, therefore, proceed to the merits of this appeal.

From the record, we understand that the facts which gave rise to this lawsuit are these: The plaintiff company is one of various businesses owned or controlled by a Robert M. Bennett, and has Bennett as its president. The defendant, Paul Elliott, is president of Power, Inc. Sometime in 1960, Power, Inc. bought two trucks from one of Bennett's companies, financing them through a bank. In August, 1961, three additional trucks were purchased by Power, Inc. from the plaintiff.

The last three trucks were financed in the following manner: (1) A cash payment; (2) execution of the "side-note" involved in this action, in the principal amount of $6,678.00, and due in twelve installments; and (3) the balance of $50,640.00 by means of a so-called equipment lease. Under the terms of this instrument, which was signed by Elliott as well as Power, Inc., the plaintiff leased the three trucks to Power, Inc. for a minimum rental period of thirty-six (36) months starting August 22, 1961, in consideration of which the lessee agreed to pay lessor the following rental:

| | |
|---|---|
| Rental, if paid in advance .......................... .. ....... | $50,640.00 |
| Advance Rental ...................... ....... .... ....... | $....... |
| Deferred Rental ................................. ....... | $50,640.00 |
| Deferred Rental Charge ....... ............... ... ....... | $ 6,076.80 |
| Total Deferred Rental and Charge .................. ........ | $56,716.80 |

payment to be made in thirty-five monthly installments of $1,575.46 each, and one final installment of $1,575.70 on August 22, 1964. Rental after the minimum period was to be $700.00 per month for twenty-four months.

It was stipulated by counsel that the deferred rental charges referred to in the equipment lease means and was intended by the parties as interest.

In November, 1961, after making two payments on the equipment lease, Elliott became financially embarrassed and commenced efforts to sell the trucks, which by this time numbered four, one having been wrecked. In his endeavors, Elliott was assisted by Bennett and in January, 1962, a sale of the trucks was consummated, with Bennett's approval, for $57,500. Bennett applied the sale proceeds to the payment of indebtedness due from Elliott to Bennett and his several companies, the proceeds from the sale being sufficient to clear up all of Elliott's indebtedness to Bennett and his companies except for the side-note sued on in this action.

After the sale of the trucks was completed, Bennett notified Elliott to resume payments on plaintiff's side-note, and Elliott, having no figures on the settlement, did so but requested a recapitulation or breakdown of the sale proceeds and their application. In May, 1962, Bennett furnished a recapitulation which Elliott did not understand, and Elliott continued to request further information and documents until August, 1962, at which time he quit paying and demanded a refund of overpayments which had been made. This suit was thereupon commenced by Star Leasing Corporation, and Elliott countered with his cross petition.

Despite the somewhat complex facts and the several assignments of error, the dispute actually simmers down to this: Plaintiff contends it is entitled to the full deferred rental charge, or interest, specified in the lease even though the full rental of $50,640.00 was paid in January, 1962, rather than over a thirty-six month period. If plaintiff is correct, then there is a balance due plaintiff on the side-note sued on. On the other hand, defendant takes the position that he is liable for deferred rental charges, or interest, only to the

date the rent of $50,640.00 was paid in full. If this contention be right, then the defendant has overpaid on the side-note and is entitled to recover an agreed amount of $890.30.

The plaintiff bases its claim on paragraph 1 of the lease, under Terms and Conditions, reading as follows:

"This lease contemplates the continuous rental of the above property at the rate of rental above agreed upon, until said property is duly returned to lessor. But the lessee shall be liable for the full rental for the entire minimum period even though the property is returned to the lessor prior to the termination of the minimum period."

On the other hand, the defendant Elliott relies on paragraph 3, the provisions of which read:

"In case of Lessee's failure or refusal to pay any one or more installments of rent, payable hereunder or to fulfill or perform any of the other agreements or conditions imposed on the Lessee within thirty (30) days after Lessee's receipt of written notice of such default, Lessor may, at its option (which shall be exercised within thirty (30) days thereafter upon written notice thereof to Lessee), unless Lessee has cured its default prior to expiration of time limit contained in said notice, elect to either:

"(a) Require Lessee to Purchase said vehicles at and for a purchase price equal to the sum of FIFTY THOUSAND SIX HUNDRED AND FORTY AND NO/100 Dollars $50,640.00, plus *earned* deferred rental payment charges, less the sum of all rentals theretofore paid, which amount will be payable by Lessee to Lessor in cash upon demand. All sales or use taxes, if any, which are applicable to such purchase shall be borne and paid by Lessee; or,

"(b) Take possession of said vehicle, including all substituted parts, accessories and equipment, with or without legal process (Lessee hereby authorizing the peaceful entry for said purpose on any premises of the Lessee)." (Emphasis supplied.)

In accordance with long-established and well-recognized rules of construction relating to the interpretation of contracts, the foregoing provisions are to be construed together in their entirety (*First National Bank of Lawrence v. Methodist Home for the Aged*, 181 Kan. 100, 309 P. 2d 389; *Drilling, Inc. v. Warren*, 185 Kan. 29, 340 P. 2d 919; *Zelinkoff v. Johnson*, 185 Kan. 489, 345 P. 2d 665), and any doubtful language which the lease contains must be held most strongly against the plaintiff who, as lessor, had prepared it. (*Francis v. Shawnee Mission Rural High School*, 161 Kan. 634, 170 P. 2d 807; *Kinmonth v. Holm*, 180 Kan. 389, 304 P. 2d 494; *First National Bank of Lawrence v. Methodist Home for the Aged*, supra.)

So construed, we believe that paragraphs 1 and 3, which alone bear on the question presented here, mean just this: Upon default by the lessee, Elliott, in any installment of rent or other condition

in the lease, the lessor, Star Leasing Corporation, would be entitled to exercise either one of two options; first, it might require full payment of the entire rental which then remained unpaid together with deferred rental charges, or interest, to the date on which the entire rental became paid, or, second, the lessor might take possession of the trucks (which would constitute their return to him), and the lessee would then be obligated, under paragraph 1, to pay the deferred rental charges, or interest, in full for the remainder of the entire thirty-six month period.

This construction, in our opinion, accords with what the parties must have had in mind when the lease agreement was executed. It is logical to presume that paragraph 1 was intended to protect the lessor from loss in the event he had to take the trucks back, whether the lessee returned them or he, himself, took possession by exercising the option contained in paragraph 3(b). The lessor might well experience a loss in disposing of the trucks returned and, in any event, would have sale expenses and some loss of use of his capital. It is unreasonable to assume that the parties ever intended the lessee to collect interest on the rent after the rent had been fully paid. Such a result would violate the ancient adage that one cannot have his cake and eat it, too. We will not impute to the parties, at the inception of their agreement, any intent to produce a result so harsh and inequitable.

It is obvious that plaintiff did not elect to take possession of the trucks pursuant to paragraph 3(b). Neither was the option contained in 3(a) exercised in strict compliance with the contract, for no written notice of election is shown to have been given Elliott. However, we believe that Bennett's actions in assisting Elliott to sell the trucks and plaintiff's acceptance, through its president Bennett, of the full rent some thirty-one months before all the rent became due was tantamount to an election by plaintiff to exercise the option granted in 3(a). In any event, the trucks never were returned to plaintiff's possession and, consequently, plaintiff never became entitled, under *any* of the terms in the lease, to collect deferred rental charges, or interest, after the rental was paid in its entirety.

It is suggested in the plaintiff's brief that the defendant Elliott is estopped to claim he was not credited with the proper amounts when he continued making payments on the side-note after the trucks were sold. There are at least two answers to this contention: First, the plaintiff did not plead estoppel, which is an affirmative

defense and must be pleaded. Estoppel cannot be proved under a general denial. (*City of Chetopa v. Labette County Comm'rs*, 156 Kan. 290, 292, 133 P. 2d 174; *Muenzenmayer v. Luke*, 161 Kan. 597, 602, 170 P. 2d 637.) Second, when the payments were made, Elliott was not in possession of the figures concerning the sale of the trucks and the application of the sale proceeds. He was in fact, at the very time his payments were made, attempting to secure a recapitulation from Bennett. In 19 Am. Jur., Estoppel, § 49, the rule is stated:

"It is essential to the doctrine of equitable estoppel that the party sought to be estopped should have had knowledge of the facts, or at least that he should have had the means at hand of knowing all the facts or have been in such a position that he ought to have known them. This rule applies with particular force where the estoppel is claimed by reason of silence or inaction . . . ." (pp. 648, 649.)

Under the circumstances shown to exist in this case, the doctrine of estoppel is not applicable and plaintiff's contention in such respect is without merit.

One final complaint contained in the specifications of error may be noted. Throughout the entire trial proceedings the plaintiff objected to having a jury sit in the case. However, we are not now called upon to decide whether error was committed in this regard, inasmuch as the trial court discharged the jury at the completion of the evidence and determined the case as a court matter.

We find nothing in the record to justify reversal of the trial court's judgment and it is, therefore, affirmed.