NOT DESIGNATED FOR PUBLICATION

No. 114,113

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRIDGESTONE RETAIL OPERATIONS, LLC
D/B/A FIRESTONE COMPLETE AUTO CARE,
*Appellant*,

v.

GFTLENEXA, LLC
*Appellee*.


MEMORANDUM OPINION


Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed February 26, 2016. Reversed and remanded with direction.


*John R. Hamilton* and *David A. Brock*, of Hamilton, Laughlin, Barker, Johnson & Jones, of Topeka for appellant.


*Christopher J. Mohart*, of Polsinelli PC, of Kansas City, Missouri, for appellee.


Before GARDNER, P.J., HILL and POWELL, JJ.


*Per Curiam*:  This declaratory judgment action involves the interpretation of a contract. After the parties filed cross-motions for summary judgment, the district court granted GFTLenexa's motion and denied Bridgestone Retail Operations, LLC's motion. Bridgestone timely appeals, arguing that the district court misinterpreted the controlling provision of the contract. We agree and therefore reverse.


1

*Procedural background*

The facts are undisputed. Oak Park Commons, L.P., leased property it owns on 95th Street in Lenexa, Kansas, to Centres Midwest BFS, LLC, which subleased the property to Bridgestone. Centres Midwest then assigned both its lease with Oak Park Commons and its sublease with Bridgestone to GFTLenexa.

Sometime later, the City of Lenexa condemned several tracts of land along 95th Street to improve the road, including approximately 0.39 acres of the property leased by Bridgestone. None of Bridgestone's improvements was taken and no damage was done to its building. Oak Park Commons and Bridgestone were parties to the condemnation action, but GFTLenexa was not. The condemned property was valued at $285,925 which was paid to Oak Park Commons. Neither Bridgestone nor GFTLenexa received any condemnation proceeds. Bridgestone did not bring any claims against the City of Lenexa or Oak Park Commons.

Bridgestone did, however, file a petition for declaratory judgment, claiming that based on the sublease, GFTLenexa was required to reduce Bridgestone's rent due to the condemnation. GFTLenexa moved for summary judgment, arguing that because it had not received any condemnation proceeds Bridgestone was not entitled to a rent reduction. Bridgestone also filed a motion for summary judgment.

After oral argument, the district court determined that summary judgment was appropriate. It agreed with GFTLenexa's interpretation of the sublease and found that Bridgestone was not entitled to a rent reduction because GFTLenexa had not received any condemnation proceeds. Accordingly, it granted GFTLenexa's motion and denied Bridgestone's petition. Bridgestone timely appeals, arguing that the district court's interpretation of the sublease was incorrect and that the sublease entitles it to a rent reduction regardless of whether GFTLenexa received any condemnation proceeds.

2

*Standard of review and contract interpretation*

A motion for summary judgment should be granted when the pleadings and evidence show "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." K.S.A. 2015 Supp. 60-256(c)(2). Appellate courts apply the same rules. *Bergstrom v. Noah*, 266 Kan. 847, 871, 974 P2d 531 (1999).

We have unlimited review over "[t]he interpretation and legal effect of a written contract." *Connor v. Occidental Fire & Cas. Co.*, 281 Kan. 875, 881, 135 P.3d 1230 (2006), and we are not bound by the district court's construction of a contract. *City of Arkansas City v. Bruton*, 284 Kan. 815, 828-29, 166 P.3d 992 (2007).

Whether a contract is ambiguous is a matter of law subject to de novo review. *Liggatt v. Employers Mut. Casualty. Co.*, 273 Kan. 915, 921, 46 P.3d 1120 (2002). Our main objective when interpreting contracts is to ascertain the parties' intent. *Anderson v. Dillard's, Inc.*, 283 Kan. 432, 436, 153 P.3d 550 (2007). If the contract's terms are clear, the parties' intent may be ascertained from the contract without applying rules of construction. 283 Kan. at 436. A contract should be construed while considering the entire document and without isolating particular sentences or provisions. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013). We also avoid results that vitiate the purpose of a contract's terms, reduce them to an absurdity, or are otherwise unreasonable. 296 Kan. at 963.

*Interpretation of the "extent of condemnation proceeds actually received."*

The crucial portion of the Sublease is Section 17, captioned "Condemnation." Subsection A relates to condemnation of the entire Premises and is inapplicable here. Subsection B relates to condemnation of less than the entire Premises and applies here to Bridgestone, as Tenant, and GFTLenexa, as Landlord. It states in relevant part:

3

"If during the Term of this Sublease, (i) any part of the Building or (ii) any other portion of the Premises which, if taken, would, in Tenant's sole but reasonable judgment, render the Premises not suitable for the Intended Use or such other use which Tenant is using the Premises for as of the date of such taking, is condemned for public use under right of eminent domain, Tenant may, at its option, terminate this Sublease. If Tenant shall not elect to terminate this Sublease, Landlord shall only to the extent of condemnation proceeds actually received, restore and rebuild the Premises to provide Tenant, as far as possible, all the improvements and building facilities existing before the taking, and the monthly rental thereafter to be paid shall be reduced by an amount that bears the same ratio to the rent herein provided for as the amount of damages awarded (in excess of allowance for building revision) bears to the total value prior to such taking."

Specifically, the parties dispute the application of the phrase: "only to the extent of condemnation proceeds actually received." Bridgestone believes that language applies only to the promise to restore and rebuild the premises. GFTLenexa argues that the language is a condition precedent which also applies to the rent reduction clause, meaning GFTLenexa must receive condemnation proceeds before Bridgestone is entitled to a rent reduction.

We first examine the grammatical structure of this lengthy, disputed sentence. Structurally, the sentence reads like this:

If Tenant shall not elect to terminate this Sublease,

1. Landlord shall only to the extent of condemnation proceeds actually received, restore and rebuild the Premises to provide Tenant, as far as possible, all the improvements and building facilities existing before the taking, and
2. the monthly rental thereafter to be paid shall be reduced by an amount that bears the same ratio to the rent herein provided for as the amount of damages awarded (in excess of allowance for building revision) bears to the total value prior to such taking.

This sentence contains two separate and independent clauses—a restore and rebuild clause and a rent reduction clause. The disputed clause reads naturally as part of the rent reduction clause, stating the "Landlord shall only to the extent of condemnation proceeds actually received, restore and rebuild the Premises . . . ." That same phrase, however, if appended to the rent reduction clause, would read: "Landlord shall only to the extent of condemnation proceeds actually received, . . . the monthly rental thereafter to be paid shall be reduced. . . ." That sentence, read as GFTLenexa proposes, is nonsensical and meaningless. Accordingly, we find the plain meaning of the language regarding condemnation proceeds pertains only to the restore and rebuild clause in which it appears. See *Osterhaus v. Toth*, 291 Kan. 759, 789, 249 P.3d 888 (2011) (finding a court should give words in common usage their natural and ordinary meaning). The condemnation proceeds clause is not a condition precedent but merely a cap on the amount of money the landlord must spend to restore and rebuild the improvements and buildings—a duty not invoked here by either party.

We next examine the purpose and effect of the disputed clause. If part of the premises that the Tenant is renting is permanently condemned, it seems reasonable that the Tenant's rent would be permanently reduced by an amount equal to the loss in value of those premises. To conclude otherwise, as did the district court, would require a Tenant to pay full fair-market value rent for the entire premises even though Tenant no longer receives the value of the entire premises. But under GFTLenexa's view, since it did not receive condemnation proceeds, Bridgestone must continue to pay full rent which amount was calculated on $285,925 worth of ground that is now owned by the City of Lenexa. We find Bridgestone's interpretation to be reasonable from an equity viewpoint.

Lastly, we find some logical appeal to Bridgestone's interpretation. In GFTLenexa's view, had it received condemnation proceeds, Bridgestone's rent would be reduced "only to the extent of condemnation proceeds actually received." Then the monthly rental would "be reduced by an amount that bears the same ratio to the rent

5

herein provided for as the amount of damages awarded (in excess of allowance for building revision) bears to the total value prior to such taking." Apparently, the amount of the rent reduction would be offset against the total amount of the proceeds, here, $285,925, until that amount was depleted; thereafter, Bridgestone would return to paying the full rent, despite the condemnation of part of its premises. That construction would result in a temporary rent reduction for a permanent taking, an unreasonable result.

*Interpretation of "if Tenant shall not elect to terminate this Sublease."*

GFTLenexa argues that even if Bridgestone prevails on its interpretation of the issue addressed above, Bridgestone is nonetheless not entitled to summary judgment. According to GFTLenexa, before the restore and rebuild and rent reduction clauses can be enforced, Bridgestone must show it had the right to terminate the sublease but chose not to. GFTLenexa contends that Bridgestone's right to terminate the sublease is a separate condition precedent presenting an unresolved question of material fact precluding summary judgment.

The sublease indicates that if a portion of the premises is taken, the Tenant has two options. First, the Tenant may terminate the sublease if, based on its reasonable judgment, the premises is no longer suitable for its intended use or, alternatively, for its actual use before the taking. Second, if the Tenant chooses not to terminate the sublease, the landlord is required to restore and rebuild the premises and the rent will be reduced. The relevant portion of the sublease provides:

> "If during the Term of this Sublease . . . any other [than the building] portion of the Premises which, if taken, would, in Tenant's sole but reasonable judgment, render the Premises not suitable for the Intended Use or such other use which Tenant is using the Premises for as of the date of such taking, is condemned for public use under right of

6

eminent domain. Tenant may, at its option, terminate this Sublease. If Tenant shall not elect to terminate this Sublease . . . ."

The sublease thus allows for a rent reduction only if the Tenant "shall not elect to terminate this sublease." GFTLenexa asserts this language means that the rent will be reduced only if the Tenant first has the right to elect to terminate the sublease by meeting the conditions precedent to termination, then chooses not to terminate. To terminate the sublease, Bridgestone would have to show that, in its reasonable judgment, the condemnation rendered the premises no longer suitable for its intended purpose or, alternatively, for its actual use on the date of the taking.

Bridgestone, however, argues that it did "not elect to terminate this Sublease" as evidenced by the fact the Sublease remains in effect; this triggered the Landlord's duties "[i]f Tenant shall not elect to terminate this Sublease . . . ." Bridgestone contends that only if it chose to terminate the Sublease does the language require it to show that the premises were unsuitable for its intended or its actual use.

We find the plain language of the Sublease favors Bridgestone's interpretation. The plain language itself places no conditions on Bridgestone's decision not to terminate the Sublease. Instead, it states what the Landlord's duties are to the Tenant in the event of condemnation when the Tenant does "not elect to terminate" the Sublease. The language does not require the Tenant to make any election, as may have been more a plausible argument had the language stated the Tenant "elects not to terminate" the Sublease, thus implying that some election is necessary.

Nor does the language require the Tenant to prove that the premises were, in its judgment, unsuitable for its intended or its actual use before it could choose to remain on the premises. Requiring the Tenant to show that the premises are unsuitable makes sense as a condition precedent to Tenant's termination of the Sublease. But requiring the Tenant

7

to show that the premises are unsuitable before the Tenant can continue the Sublease, post-condemnation, as Bridgesone did here, makes no sense. Bridgestone did not elect to terminate the Sublease after partial condemnation of its premises. This triggered the landlord's duties under Section 17B to restore and rebuild any preexisting improvements and building facilities that were damaged by the condemnation (up to the amount of condemnation proceeds received) and to reduce the rent proportionally.

*Ambiguity*

Alternatively, we find the lease to be ambiguous. Ambiguity in a contract does not appear until application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper one. *State v. Downey*, 198 Kan. 564, 568, 426 P.2d 55 (1967). In such a case, any doubtful or uncertain language in the lease must be construed against the drafter of the lease. See *Star Leasing Corp. v. Elliott*, 194 Kan. 206, 209, 398 P.2d 566 (1965) (construing lease against the lessor). Although the record does not reflect who drafted the lease, we believe we are on safe ground in presuming it to be the Landlord, rather than the Tenant. Construing the disputed language against GFTLenexa, we arrive at the same conclusions as above.

*Amount of rent reduction*

Because the district court interpreted the Sublease to require no rent reduction, it did not calculate any amount of rent reduction. Bridgestone suggests that amount is 14.89%, based on the following amounts: "the monthly rental [$20,856] thereafter to be paid shall be reduced by an amount [14.89%] that bears the same ratio to the rent herein provided for as the amount of damages awarded [$285,925] (in excess of allowance for building revision [$0]) bears to the total value prior to such taking [$1,919,990]."

We leave the correctness of that calculation to be determined by the district court on remand.

Reversed and remanded with directions.